[Civ. No. 53605. First Dist., Div. Four. Apr. 29, 1982.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY,
Respondent;
NICHOLAS BALENTINE GARCIA, Real Party in Interest.

COUNSEL

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, and Ann K. Jensen, Deputy Attorney General, for Petitioner.

No appearance for Respondent.

Leon L. Anderson for Real Party in Interest.

OPINION

POCHÉ, J.—The People petition for a writ of mandate directing the Santa Clara County Superior Court to set aside its order striking allegations of special circumstances (Pen. Code, § 190.2)[1] with respect to an amended information filed against real party in interest, Nicholas Balentine Garcia. The sole question is whether an accused who rescinds a plea bargain can insist on its benefits. We conclude he cannot and that a peremptory writ of mandate should issue.

*Facts*

The events leading to the present petition may be summarized as follows:

Pursuant to a plea bargain defendant entered a plea of guilty to murder in the first degree.[2] At the voir dire prior to the entry of the plea

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.
[2] Defendant was charged in a complaint filed January 19, 1978, with murder (§ 187), use of a deadly and dangerous weapon (§ 12022), robbery (§ 211), and two counts of

the prosecutor made it clear that but for the bargain he would be alleging special circumstances in connection with the murder, and defendant made it equally clear that he was pleading guilty to avoid the death penalty. Shortly after the entry of plea, but prior to sentencing, defendant moved to withdraw his guilty plea. His motion was denied and he was then sentenced to life imprisonment. That judgment of conviction was reversed on appeal: the trial court was directed to allow defendant the opportunity to withdraw his guilty plea and to substitute a plea of not guilty.

After this was accomplished, the prosecutor filed an amended information adding three separate special circumstances.[3] Defendant successfully moved to strike each. This petition by the People follows.

### Discussion

█  Familiar and basic principles of law reinforced by simple justice require that when an accused withdraws his guilty plea the status quo ante must be restored. When a plea agreement has been rescinded the parties are placed by the law in the position each had before the contract was entered into. (*In re Sutherland* (1972) 6 Cal.3d 666, 672 [100 Cal.Rptr. 129, 493 P.2d 857].) Here defendant agreed to plead guilty to murder in order to obtain a reciprocal benefit: the forbearance of the prosecutor in not amending the information to seek the death penalty. When a defendant withdraws his plea, the prosecutor is no longer

burglary (§ 459). On March 23, 1978, the date set for preliminary hearing, he entered pleas of guilty to murder (stipulated to be of the first degree) and one count of burglary and admitted the arming allegation. The remaining counts of robbery and burglary were dismissed.

[3]The amended information filed June 4, 1981, charged defendant in count I with the murder of Ida Mae Overhold (§ 187) accompanied by three allegations of special circumstances, in particular: (1) that "the defendant has in this proceeding been convicted of more than one offense of murder in the first or second degree" (§ 190.2, subd. (a)(3)), (2) "The murder was committed while the defendant was engaged in ... the commission of, [or] attempted commission of ... [r]obbery .." (*id.*, subd. (a)(17)(i), (3) "The murder was committed while the defendant was engaged in .. the commission of, [or] attempted commission of ... [b]urglary ..." (*id.*, subd. (a)(17)(vii); in count II with robbery (§ 211); in count III with burglary; (§ 459) and, in count IV with murder of Carl Patterson (§ 187). It was also alleged that defendant personally used a deadly or dangerous weapon in connection with each murder (§ 12022, subd. (b)): a knife and scissors in connection with count I, and a knife in connection with count IV.

Defendant moved to strike the special circumstances allegation of count I and to dismiss counts II, III, and IV. On July 21, 1981, the trial court granted the motion with respect to the special circumstances allegations and denied the motion with respect to the other counts. Because defendant did not file a timely petition for relief, the ruling with respect to counts II, III, and IV is not before us.

bound; counts dismissed may be restored. (*People* v. *Collins* (1978) 21 Cal.3d 208, 215 [145 Cal.Rptr. 686, 577 P.2d 1026].)

Defendant contends these rules change when the withdrawal of a plea is ordered by an appellate court. In particular he emphasizes one sentence in *People* v. *Henderson* (1963) 60 Cal.2d 482, 497 [35 Cal.Rptr. 77, 386 P.2d 677]: "A defendant's right of appeal from an erroneous judgment is unreasonably impaired when he is required to risk his life to invoke that right."

Defendant, noting that he was successful on appeal from a judgment of conviction imposing imprisonment and that the prosecutor now seeks the death penalty, believes that one sentence in *Henderson* works for him. It doesn't. It has never been utilized in a situation such as this involving a plea bargain, and for good reason. *Henderson* involved double jeopardy; the case at hand does not. The language taken from *Henderson* relied upon by defendant here means only that the right of appeal from an erroneous judgment *after trial* is unreasonably impaired when a defendant is required to risk a harsher penalty to invoke that right.

The defendant in *Henderson* had two trials. In the first, he had pled guilty to murder so that the only matter left to the trier of fact, the trial judge, was the degree of the murder. In that trial Mr. Henderson put himself at risk—in jeopardy—not only of a finding that the murder was of the first degree but also of the penalties including death[4] that could flow from such a determination. He lost the first gamble: the trier of fact determined the murder was of the first degree; he won the second: he was not sentenced to death but to life imprisonment.

Henderson successfully appealed from that judgment. He was retried by a jury on the same information, found guilty of murder in the first degree and then was sentenced to death. On appeal from this second judgment he contended "that the prohibition against double jeopardy precludes imposing the death sentence after reversal of the first judgment sentencing him to life imprisonment." (60 Cal.2d at p. 495.) The California Supreme Court, finding double jeopardy principles violated, repeatedly emphasized the "retrial" aspects of the case. (*Ibid.*) Thus, the language from *Henderson* must be read and understood in the sec-

---

[4]When Henderson was tried the concept of special circumstances was an unknown entity. (See former § 190 (Stats. 1957, ch. 1968, § 1, p. 3509); § 190.1 (Stats. 1957, ch. 1968, § 2, pp. 3509-3510).)

ond *trial* context in which it was written: the double jeopardy clause forbids the imposition of a more severe penalty on *retrial.*

The case at bench—distinctly different from *Henderson*—does not involve double jeopardy or successive trials. What defendant faces here as a result of his choice to withdraw his guilty plea is allowed by both the California and United States Constitutions: single jeopardy. A contrary result would destroy any reason for a prosecutor to enter into a plea bargain. The bargain would turn into a ceiling on punishment binding only on the prosecutor.

Let a peremptory writ of mandate issue directing the superior court to set aside its order striking the allegations of special circumstances in count I of the amended information.

Christian, J., concurred.

**RATTIGAN, Acting P. J.**—I dissent. The terminal holding in *Henderson* supports the trial court's order striking the allegations of special circumstances. This holding reads in full as follows: "A defendant's right of appeal is unreasonably impaired when he is required to risk his life to invoke that right. Since the state has no interest in preserving erroneous judgments, it has no interest in foreclosing appeals therefrom by imposing unreasonable conditions on the right to appeal." (*People* v. *Henderson* (1963) 60 Cal.2d 482, 497 [35 Cal.Rptr. 77, 386 P.2d 677].)

The judgment of conviction which initially imposed the bargained life sentence on this defendant (real party in interest) was reversed in an unpublished opinion by Division One of this court in *People* v. *Garcia* (1980) 1 Crim. 19630. The opinion records the following material facts: Defendant entered the bargained plea of guilty to the murder charge on March 23, 1978. When the case was called for sentencing one week later, he informed the court that he wanted to withdraw the plea. His original attorney declared a conflict of interest and was relieved. On April 10, new counsel was appointed to evaluate the request for withdrawal of the plea. In June, the new attorney formally moved for leave to withdraw the plea on the grounds (among others) that defendant had entered it under "stress and pressure" and that he had been "pressured" by his former attorney to enter it.

The motion was denied, and defendant was sentenced to life imprisonment pursuant to the bargain. He appealed from the judgment of conviction, claiming a prejudicial abuse of discretion in the denial of the motion. The appellate court agreed, holding that defendant had established in the trial court that "his mental stress was such that it affected his free and clear judgment" when he bargained the plea and entered it. The court thereupon reversed the judgment and directed the trial court to permit defendant to withdraw the plea and enter a plea of not guilty.

Defendant thus established in this court that his initial conviction was an "erroneous judgment," within the meaning of the *Henderson* holding quoted above, because it was based on a plea which he was incompetent to bargain and enter. Having prevailed on the appeal from the erroneous judgment, he is now facing the death penalty. This prospect is reached and precluded by the *Henderson* holding.

The effect of the *Henderson* holding cannot reasonably be avoided by citing distinctions between the jeopardy backgrounds of that case and this one. The holding was made on the ground of double jeopardy because the defendant in *Henderson* asserted *only* that ground in challenging a death sentence imposed on him after he had prevailed on an appeal from a previous judgment sentencing him to life imprisonment. (*People v. Henderson, supra*, 60 Cal.2d 482 at p. 495; see Van Alstyne, *In Gideon's Wake: Harsher Penalties and the "Successful" Criminal Appellant* (1965) 74 Yale L.J. 606, 634.) His contention made *Henderson* a jeopardy decision, but this did not operate to limit the holding to the facts of the case or to jeopardy situations. The holding itself was not so limited, and it established the unqualified policy that "a defendant is not required to risk his life to invoke his right to appeal from an erroneous judgment imposing a life sentence." (*People v. Ali* (1967) 66 Cal.2d 277, 281 [57 Cal.Rptr. 348, 424 P.2d 932].) The policy has been established and enforced on a variety of grounds, of which double jeopardy is only one. (See Comment *The Constitutionality of Reindicting Successful Plea-Bargain Appellants on the Original, Higher Charges* (1974) 62 Cal.L.Rev. 258, 259, 261, 271-272 et seq., 279 et seq.) The broad language of the *Henderson* holding applies, regardless of the ground, because it addresses life-and-death reality regardless of theory.

Contrary to the express terms of the *Henderson* holding, the majority opinion in this case will have the effect of "foreclosing appeals" from "erroneous judgments" by retroactively "imposing unreasonable condi-

tions on the right to appeal" which was successfully exercised by this defendant. I would stand on the holding and deny the petition.