**STATE of Utah, Plaintiff and Appellee,**

v.

**Frank David GENTRY, Defendant and Appellant.**

**No. 890145–CA.**

Court of Appeals of Utah.

Aug. 24, 1990.

George T. Waddoups (argued), Watkiss & Saperstein, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, State Atty. Gen. and Sandra L. Sjogren (argued), Asst. Atty. Gen., Salt Lake City, for plaintiff and appellee.

Before BILLINGS, GARFF and GREENWOOD, JJ.

OPINION

GREENWOOD, Judge:

Appellant Frank D. Gentry appeals the trial court's denial of his motion to withdraw his guilty plea. We reverse and remand.

Gentry was one of six children born to Milton and Ivy Jane Gentry. Milton owned a 1,840 acre ranch located near the Beaver/Iron County line in southern Utah. In 1949, Gentry built a cinder block cabin on the ranch. Since that time, Gentry worked the ranch on a daily basis and lived in the cabin nearly full time. Milton died in 1962 and, by holographic will, left the ranch to Ivy Jane and their six children. After his father died, Gentry continued to work the ranch. In 1966, Gentry's siblings and Ivy Jane executed a power of attorney authorizing Gentry to manage the ranch. When Ivy died intestate in 1977, Gentry and his siblings each inherited an equal share of the ranch.

Soon after Gentry began managing the ranch, antagonism developed between Gentry and his siblings. Their relationship eroded and the family began to question Gentry's authority to manage the ranch. The ranch also became the subject of a series of lawsuits and court-ordered sales. In 1981, as a result of a lawsuit to partition the ranch, the district court ordered a sale of the ranch. Gentry's interest in the ranch was purchased for approximately $22,000. Gentry objected to the validity of the sale, claiming that the payment was intended solely to reimburse him for improvements and work he had performed on the ranch. Several months passed before he negotiated the check representing his sale proceeds. He allegedly later used the money for improvements and upkeep on the ranch.

After the 1981 partition sale, Gentry continued to use the ranch. In 1983, Gentry retained an attorney and attempted to pur-

chase a portion of the ranch from two of the owners, but did not consummate any purchase. On November 10, 1986, Gentry's brothers, Mack and Joseph Gentry, each sold their interest in the ranch to Dan and Paul Roberts, sons of Gentry's sister, Mary Lou.

In 1986 and 1987, without permission from the ranch owners, Gentry and his son, Curtis, received payments from Carlyle Stirling for grazing on the ranch property. They did not transmit any of the monies collected from Stirling to the ranch owners.

Dan and Paul Roberts brought charges of theft by deception and criminal trespass against Gentry and his son Curtis. Gentry and his son countered with a civil suit for quiet title and adverse possession against all the ranch co-tenants.

On September 20, 1988, Gentry appeared at an arraignment before Judge J. Philip Eves. Gentry reviewed and signed an affidavit, which set forth the charge of theft, but not the alleged facts. Gentry pled not guilty.

Trial was held before Judge Eves on January 25, 1989. After the close of evidence, but prior to closing arguments, Gentry changed his plea from not guilty to guilty of theft, a third degree felony. The State dismissed the criminal trespass charge. Imposition of sentence was stayed pending Gentry's successful completion of eighteen months probation. Conditions of probation included Gentry agreeing to 1) not enter the ranch property without prior written consent of Paul or Dan Roberts, 2) not harass or offensively communicate with any family member, 3) dismiss his pending civil suit against persons holding an ownership interest in the ranch property, and 4) relinquish any interest in the property.

On February 16, 1989, Gentry's counsel withdrew. Gentry retained new counsel and on February 24, 1989, filed a notice of appeal of the trial court's decision. On April 6, 1989, Gentry filed a motion and supporting memorandum to withdraw his guilty plea and to remand for a preliminary hearing. This court stayed the appeal for sixty days or until the trial court ruled on Gentry's motion to withdraw his guilty plea. On August 28, 1989, Gentry filed a motion for a new trial and a motion to disqualify Judge Eves, with supporting memorandum, affidavit of Gentry, and certificate of counsel. On September 1, 1989, Judge Eves denied Gentry's motion to withdraw the plea, but did not rule on Gentry's other two motions.

On appeal, Gentry argues that the trial court erred by 1) denying Gentry's motion to withdraw his guilty plea; 2) failing to dispose of his motion to disqualify the trial judge; and 3) failing to dispose of his motion for a new trial. Gentry also claims he was denied effective assistance of counsel.[1]

## WITHDRAWAL OF GUILTY PLEA

Gentry claims the trial court abused its discretion in denying his motion to withdraw his guilty plea. Specifically, Gentry argues that the trial court failed to explain to Gentry the elements and facts of the crime of theft before he pled guilty, and that the trial court further erred by relying on an incomplete record as a substitute for Rule 11 compliance, in determining that Gentry entered his plea with full knowledge and understanding of its consequences. Gentry also asserts that his hearing impairment precluded him from being able to fully understand the factual elements of the charges during the course of the trial.

■ Utah Code Ann. § 77–13–6 (1990) states, in pertinent part, that "[a] plea of guilty ... may be withdrawn only upon good cause shown and with leave of court." We will reverse the denial of a motion to withdraw a guilty plea only when it clearly appears the trial court has abused its discretion by failing to find good cause. *State v. Mildenhall*, 747 P.2d 422, 424 (Utah 1987); *State v. Vasilacopulos*, 756 P.2d 92, 93 (Utah Ct.App.1988).

---

1. The State argues that this appeal is moot since Gentry will complete his eighteen month probation before this court's opinion issues. We do not agree because the conditions of Gentry's probation, including his promise to abandon both his pending civil action and any interest in the ranch, will continue despite completion of probation.

Rule 11(5)[2] of the Utah Rules of Criminal Procedure provides, in pertinent part:

> The court may refuse to accept a plea of guilty or no contest, and may not accept the plea until the court has found:
>
> . . . .
>
> (d) the defendant understands the nature and elements of the offense to which he is entering the plea; that upon trial the prosecution would have the burden of proving each of those elements beyond a reasonable doubt; and that the plea is an admission of all those elements. . . .

Utah R.Crim.P. 11(5).

In cases considered prior to 1987, the Utah Supreme Court held that the record as a whole may affirmatively establish that defendant entered his or her guilty plea with full knowledge and understanding of its consequences and of the rights waived. *State v. Miller,* 718 P.2d 403, 405 (Utah 1986) (per curiam); *Warner v. Morris,* 709 P.2d 309, 310 (Utah 1985); *Brooks v. Morris,* 709 P.2d 310, 311 (Utah 1985) (per curiam).

In *State v. Gibbons,* 740 P.2d 1309 (Utah 1987), however, the supreme court modified its prior decisions and held that the trial court has the burden of ensuring that Rule 11(5) requirements are complied with when a guilty plea is entered. *Id.* at 1312–13. The supreme court stated that "to make a knowing guilty plea, the defendants must understand the elements of the crimes charged and the relationship of the law to the facts." *Id.* at 1312. *Gibbons* noted that a sufficient affidavit may be a starting point in determining whether a defendant has an adequate understanding; however, the court "should then review the statements in the affidavit with the defendant, question the defendant concerning his understanding of it, and fulfill the other requirements imposed by § 77–35–11 on the record before accepting the guilty plea." *Id.* at 1314. If a court does not use an affidavit, the requirements in *Gibbons* and in Rule 11(5) must likewise be met and be on the record. *Id.*

This court has interpreted *Gibbons* as effectively replacing the "record as a whole" test with a strict Rule 11(5) compliance test in accepting a defendant's guilty plea. *State v. Valencia,* 776 P.2d 1332, 1335 (Utah Ct.App.1989) (per curiam); *Vasilacopulos,* 756 P.2d at 94.[3] The supreme court also has regarded *Gibbons* as a new rule of criminal procedure, constituting a clear break with the past. *State v. Hickman,* 779 P.2d 670, 672 n. 1 (Utah 1989) (per curiam). Consequently, both Utah appellate courts have refused to apply the *Gibbons* strict compliance test to pre-*Gibbons* guilty pleas. *See, e.g., Hickman,* 779 P.2d at 672 n. 1; *Vasilacopulos,* 756 P.2d at 94.

The State claims, however, that the "record as a whole" test remains viable even after *Gibbons.* The State contends that a close reading of *Gibbons* reveals that the supreme court was simply pointing out the preferred and safest method of determining the voluntariness of a plea. The State reasons that since the supreme court was able to review the transcript and determine that the examination of *Gibbons* was inadequate, it would have remanded the case with an order that the plea be withdrawn rather than remanding for a hearing on the issue of voluntariness if it intended to impose a rule of strict Rule 11 compliance. The State also relies on *Jolivet v. Cook,* 784 P.2d 1148 (Utah 1989) and *State v. Copeland,* 765 P.2d 1266 (Utah 1988) to demonstrate that the supreme court, even after *Gibbons,* relies on the "record as a whole" test.

---

**2.** In 1989, the subsection in former Rule 11(e) was redesignated as Rule 11(5). *See* 1989 Utah Laws, ch. 65, § 2.

**3.** *In State v. Thurston,* 781 P.2d 1296, 1301 (Utah Ct.App.1989), this court used "the record as a whole" language in the opinion, but the issue argued by appellant was that he did not voluntarily plead guilty, because he mistakenly relied on the state's assurance that it would recommend probation rather than incarceration. Neither the state nor appellant addressed the issue of whether *Gibbons* had resulted in the demise of the "record as a whole" test. Therefore, we do not read *Thurston* as supporting the state's position in this case.

We cannot agree. First, the State misconstrues *Gibbons*. *Gibbons* does not simply state a preferred method for determining the voluntariness of a plea, but clearly mandates that the trial court must conduct an on-the-record review with defendant of the Rule 11(5) requirements. *Gibbons*, 740 P.2d at 1313–14. Also, the supreme court did not remand *Gibbons* for a hearing on the issue of voluntariness, but for the purpose of allowing defendant to move to withdraw his guilty plea because he had not previously filed such motion. *Id.* at 1311. Finally, it appears that the court applied the "record as a whole" test in *Jolivet* and *Copeland* because the guilty pleas in both cases were entered before the *Gibbons* decision: Jolivet entered his plea in 1984, *see State v. Jolivet*, 712 P.2d 843, 843–44 (Utah 1986) (date of plea revealed in Jolivet's first appeal), and Copeland entered his plea in 1986. *Copeland*, 765 P.2d at 1267.

In this case the record clearly shows that the trial judge failed to comply with *Gibbons* and Rule 11(5). The trial judge did not conduct an on-the-record inquiry concerning Gentry's understanding of the nature and elements of the offense as required by Rule 11(5)(d). The trial court simply determined that because Gentry was present at trial, he was aware of the evidence which had been admitted and the charges against him. However, his understanding of the elements of the crime charged and how those elements relate to the evidence presented may not be presumed from his mere presence during trial. *See Valencia*, 776 P.2d at 1335. We further find it particularly necessary to require strict Rule 11 compliance in this in-

stance, where Gentry contends his hearing disability prevented him from understanding everything that went on during the trial as well as during the proceedings regarding his guilty plea.

Rule 11(5) and *Gibbons* require the vacating of Gentry's guilty plea on the ground that it was not knowingly and voluntarily made. *See State v. Smith*, 777 P.2d 464, 466 (Utah 1989). Thus, we reverse and remand to allow Gentry to withdraw his guilty plea and to proceed to a new trial on the original charges.[4] In light of our decision, we do not reach Gentry's other claims.

BILLINGS and GARFF, JJ., concur.

**4.** Usually, when a guilty plea is rescinded the parties are to be placed in the position each had before the contract was entered into. *People v. Superior Court*, 131 Cal.App.3d 256, 258, 182 Cal.Rptr. 426, 428 (1982); *see also Wilson v. State*, 698 S.W.2d 145, 146 (Tex.Crim.App.1985) (en banc) (rejects prior case law dictum that permitting a withdrawal of a guilty plea was, in effect, the granting of a new trial). This case, however, presents an unusual factual setting. Although the parties represented to the trial court that all the evidence had been presented prior to the change of plea, it is not clear how Gentry would have proceeded had the guilty

plea not been entered. Further, Judge Eves stated in his decision that the court was prepared to determine that Gentry was proven guilty beyond a reasonable doubt at the time of trial of both charges, even if Gentry had not pled guilty. Since neither counsel had presented closing arguments and since it is possible that absent the guilty plea Gentry would have produced further evidence, we find the trial court's declaration of a guilty verdict at the time of the plea nonbinding on remand. Consequently, we find that a new trial is essential to ensure that Gentry has a fair hearing on the charges.