Filed 1/8/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| WILLIAM FETTERS, | B252287, B253082 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC437875) |
| v. | |
| COUNTY OF LOS ANGELES et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment and an order of the Superior Court of Los Angeles County, Ernest M. Hiroshige, Judge. Reversed.

Collins, Collins, Muir + Stewart, Melinda W. Ebelhar, Nicole Davis Tinkham, Catherine M. Mathers, Christian E. Foy Nagy, Eric C. Brown and David C. Moore for Defendants and Appellants.

Law Offices of Goldberg & Gage, Bradley C. Gage, Terry M. Goldberg, Milad Sadr; Law Offices of Robert R. Shiri, Robert R. Shiri; Sanford M. Gage; Benedon & Serlin, Gerald M. Serlin, Douglas G. Benedon and Wendy S. Albers for Plaintiff and Respondent.

_____

On Sunday, May 10, 2009, when he was 15 years old, William Fetters (Fetters) was shot by a Los Angeles County Sheriff's deputy. Just prior to his shooting, Fetters had been playing "cops and robbers" with friends while riding his bicycle and carrying a replica of a semiautomatic pistol. Two deputies, while responding to a trespassing call, spotted Fetters on his own with the imitation pistol riding down a sidewalk in the direction opposite to which they were traveling. The deputies made an immediate U-turn and approached Fetters in their patrol car from behind. The deputies ordered Fetters to stop, which he did. What happened next is disputed. Either Fetters complied with the deputies' directive to drop the imitation firearm or he turned toward the deputies with the replica in his hand. In either event, one of the deputies fired a single shot, wounding Fetters in the chest.

Fetters was subsequently charged with three misdemeanor accounts of brandishing an imitation firearm so as to cause the deputies and a third party fear of bodily harm. In September 2009, pursuant to a plea bargain, Fetters admitted the brandishing charges and was placed on six months informal probation. In March 2010, following his successful completion of probation, the charges against Fetters were dismissed. In May 2010, Fetters filed suit against the deputies and the County of Los Angeles (the County), alleging, among other things, violation of his federal civil rights under title 42 United States Code section 1983 (section 1983). Defendants, pursuant to *Heck v. Humphrey* (1994) 512 U.S. 477 [114 S.Ct. 2364, 129 L.Ed.2d 383] (*Heck*), argued that Fetters's section 1983 claim was barred by Fetters's plea in the juvenile court proceeding. The trial court bifurcated the *Heck* issue from the liability phase of the case. After a six-day bench trial, the trial court ruled in favor of Fetters on the *Heck* issue.

A subsequent jury trial was held on only the section 1983 claim against the deputy who shot Fetters (summary judgment having been awarded to the other deputy) and the County, the latter having previously agreed that a finding against the remaining deputy on the section 1983 claim would constitute a finding that both the deputy and the County committed battery against Fetters. The jury returned a partial verdict in favor of Fetters,

2

finding that the deputy used excessive force and awarding him approximately $1.1 million in compensatory damages; the jury, however, was unable to reach a verdict on the issue of punitive damages. In addition, Fetters was awarded over $2 million in attorney fees.

The County appeals from both the judgment and the attorney fees award. One of the County's central contentions on appeal is that the trial court erred by concluding that Fetters's section 1983 claim was not barred under *Heck*, *supra*, 512 U.S. 477. We agree and remand for further proceedings consistent with our holding.

## BACKGROUND

### I.     Fetters's criminal proceeding

On August 3, 2009, a criminal petition was filed against Fetters. Fetters was charged with three counts of brandishing an imitation firearm in violation of Penal Code section 417.4.[1] Each count was identical except for the names of the three different alleged victims: the two deputies, Stephen Sorrow (Sorrow) and Andrew Campbell (Campbell), and a third person. For example, the count regarding Sorrow, the officer that fired the shot that wounded Fetters, states as follows: "On or about 05/10/2009 within the County of Los Angeles, the crime of BRANDISHING A REPLICA GUN, in

---

[1] Penal Code section 417.4 provides as follows: "Every person who, except in self-defense, draws or exhibits an imitation firearm . . . in a threatening manner against another in such a way as to cause a reasonable person apprehension or fear of bodily harm is guilty of a misdemeanor punishable by imprisonment in a county jail for a term of not less than 30 days." An "imitation firearm" is defined as any BB device, toy gun, replica of a firearm, or other device that is so substantially similar in coloration and overall appearance to an existing firearm as to lead a reasonable person to perceive that the device is a firearm." (Pen. Code, § 16700, subd. (a) [previously Pen. Code, § 12550, subd. (c)].)

When prosecuting the crime of displaying an imitation firearm by a minor, the prosecution need not prove the minor knew or should have known he was displaying the imitation weapon in a manner likely to cause another to experience apprehension or fear of bodily harm. (*In re Michael D*. (2002) 100 Cal.App.4th 115, 126.) In addition, courts have construed the term "reasonable person" in section 417.4 to refer to "anyone who witnesses the actions of the perpetrator, not just to the person against whom the device is drawn or exhibited." (*Id*. at p. 123.)

3

violation of PENAL CODE 417.4, a Misdemeanor, was committed by said minor, who did unlawfully draw and exhibit an imitation firearm in a threatening manner against S. SORROW in such a way as to cause a reasonable person apprehension and fear of bodily harm." At the August hearing, Fetters appeared with counsel and denied the petition's allegations.

On September 14, 2009, Fetters appeared once more in juvenile court, again represented by counsel. The minute order from the September hearing indicates that Fetters changed his plea and admitted the charges against him—the preprinted minute order has two boxes that the court can check to record the juvenile defendant's plea: "admits" or "pleads no contest." The "admits" box is checked. The juvenile court also checked boxes indicating, among other things that Fetters understood "the nature of the conduct alleged in the petition and the possible consequences of an admission," that his admission was "freely and voluntarily made," and that "there is a factual basis for the admission." The juvenile court further found that "[t]he petition is . . . true and said petition is sustained."

The minute order from the September hearing indicates further that the court "read and considered the Probation Officer's Report filed herein and said report is admitted into evidence by reference." A probation report prepared on September 10, 2009, contains the following summary of the "elements and circumstances" of the charges against Fetters: "On May 10, 2009 at 7:52 p.m., the minor was riding his bicycle and holding what appeared to be a firearm. The minor was contacted by deputies and instructed to put the gun down. The Minor pointed the gun at the deputies in a threatening manner. The minor was shot by Deputy Sorrow, and then transported to Holy Cross Hospital for treatment. The firearm was later identified as a plastic replica pistol, with simulated wood grips and a painted black barrell [sic.]." The probation report identified both deputies as "victims" of Fetters misconduct. The probation report recommended that Fetters be placed on informal probation without wardship.

4

At the September hearing, the juvenile court, over the objection of the prosecutor, placed Fetters on informal probation without wardship for six months.[2] Fetters accepted the terms and conditions of his probation. According to Fetters's counsel, he changed his plea from denying the allegations to admitting them in order to receive six months of probation.

On March 15, 2010, six months later, the juvenile court granted Fetters's motion to withdraw his plea and dismiss the case, finding that Fetters "successfully completed all terms and conditions" of his probation. Accordingly, the juvenile court "terminated" its prior order and dismissed the petition against Fetters.

## II. Fetters's civil proceeding

On May 17, 2010, Fetters filed his initial complaint against the deputies and the County, alleging, inter alia, negligence, battery, and intentional infliction of emotional distress, as well as a violation of "civil" and "constitutional" rights."[3] Fetters's core allegations were that the deputies used "excessive and unreasonable force" against him and that the County had been "negligent in the administration, supervision and

---

[2] At the subsequent *Heck* hearing during the civil case, the prosecutor testified that due to the "very serious nature of the charges," he was seeking, not the "informal" probation that was recommended by the probation officer and ultimately granted to Fetters, but a more "formal" probation that would make Fetters a ward of the court and might include "some sort of custody time."

[3] Although Fetters's original complaint did not contain a separate and distinct cause of action for violation of section 1983, it did contain a cause of action for violation of "civil rights" protected by Civil Code section 52.1, which protects against the interference or the attempt to interfere "with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." (Civ. Code, § 52.1, subd. (a).) In addition, the original complaint also contained a cause of action for violation of "constitutional rights." Both of these causes of action referred to Fetters's right to be "free from excessive and unreasonable force." As evidenced by the court's ruling on the County's motion for summary judgment and by the subsequent *Heck* hearing, discussed infra, both the parties and the trial court treated these causes of action as though they encompassed an express claim for violation of section 1983.

entrustment" of the deputies. With regard to the allegedly excessive and unreasonable force, Fetters alleged that he was shot "in his back" after he dropped the "toy cap gun."

On January 6, 2012, the trial court granted summary judgment as to Campbell, but denied it as to Sorrow and the County, finding that "there is a triable issue as to the basis for Plaintiff's conviction and specifically whether he brandished the gun at the time he was shot by Deputy Sorrow. [Citation.] Thus, assuming Plaintiff did plead guilty to a violation of Penal Code § 417.4, a trial or *Heck* hearing would be required to determine the factual basis for the [plaintiff's] conviction."

A *Heck* mini-trial was held over the course of six days in January and February 2012. With regard to whether Fetters pointed the imitation firearm at the deputies immediately before being shot, the testimony was conflicting. On the one hand, Fetters and a nonparty adult eyewitness testified that he never pointed the gun at the deputies prior to getting shot, with Fetters affirmatively stating that he had dropped the gun at the direction of the deputies prior to being shot. On the other hand, both deputies testified that Fetters not only had the gun in his hand before being shot, but that as he turned toward them he pointed the gun at them.[4] Adding to the conflicting testimony, a nonparty adult eyewitness testified that Fetters did not drop the gun before being shot and that he did turn toward the deputies; however, this witness could not tell if Fetters was pointing the gun toward the deputies when he turned toward them.

There was, however, general agreement on the how long the encounter between the deputies and Fetters lasted. According to Campbell, from the time he spotted Fetters riding his bicycle in the opposite direction that the patrol car was traveling until Sorrow shot Fetters a total of just "30 seconds" elapsed. According to Sorrow, from the time he began issuing commands to Fetters until he shot Fetters "probably seven seconds or less"

---

[4] An adult witness testified that earlier in the day of the shooting, Fetters had pointed what looked like a "9 millimeter" pistol at the witness and his daughter who were sitting on the front porch of their house. The witness testified that because the pistol did not have a red tip on it, it looked "real" and, as a result, Fetters's actions made him "nervous," so nervous in fact that he told his daughter to get inside the house and stay there and then told Fetters to go to his own house.

6

elapsed.  According to the nonparty witnesses, the incident between Fetters and the deputies—from the time the deputies pulled up behind Fetters on his bicycle until he was shot—lasted a "few seconds," "three maybe four seconds"; it was an "instant.  It was seconds.  Everything from the beginning to end it just went very quickly."

With regard to the criminal proceeding itself, there was even more agreement. Both Fetters's defense counsel and the prosecutor testified at the *Heck* hearing, and both affirmed that at the September 14, 2009 hearing, Fetters admitted the factual basis for the petition.

After independently securing copies of the minute order dismissing the criminal petition, the trial court requested supplemental briefing from the parties regarding the effect of the dismissal on the *Heck* issue.  On September 18, 2012, after receiving the parties' supplemental submissions, the trial court denied the "*Heck* defense," because there was "no underlying conviction to support" such a defense:  "[T]his Court finds that at the time this civil case was filed there was no existing prior conviction or admission or sentence that would bar the civil case before this Court either under *Heck* and its subsequent case progeny because the theory that the subsequent civil action against the police officers was a collateral attack on either the prior criminal conviction, admission or sentence is inapplicable."  (Boldface omitted.)

On or about November 27, 2012, Fetters filed a first amended complaint (FAC).[5] The County and Sorrow answered the FAC on February 25, 2013.

On February 27, 2013, opening statements in the liability phase of the trial were delivered to the jury.  Before the case was submitted to the jury, the County, Sorrow, and Fetters entered into a stipulation by which Fetters did not proceed with his negligence and Bane Act (Civ. Code, § 52.1) causes of action against the County.  In exchange, the County agreed that if the jury found that Sorrow violated section 1983 such a finding "would constitute a finding that both Sorrow and the County committed battery, making the County liable for all sums under the judgment except for punitive damages."

---

[5] The FAC contained an express cause of action for violation of section 1983.

7

On March 26, 2013, after a week of deliberation, the jury returned with a partial verdict on three of the four questions presented to them, finding that Sorrow used excessive force when he shot Fetters and awarding Fetters $1,127,600 in compensatory damages. On the following day, the jury resumed deliberations on the remaining question (punitive damages), but could not reach a decision, leading the trial court to declare a mistrial on that issue. Following the denial of its motion for a new trial, the County timely appealed on November 1, 2013 (B252287).

In October 2013, Fetters moved for his attorney fees. On December 3, 2013, the trial court awarded Fetters $2, 317,043 in attorney fees. On December 5, 2013, the County and Sorrow timely appealed from the attorney fees award (B253082). On May 15, 2014, pursuant to a stipulation by the parties, the two separate appeals were consolidated for all purposes.

## DISCUSSION

### I.     Standard of review

The sole question before the trial court at the *Heck* hearing was whether Fetters's section 1983 claim was foreclosed by the United States Supreme Court's holding in *Heck*, *supra*, 512 U.S. 477. The trial court answered that question in the negative. There was no substantial conflict in the testimony of the witnesses with regard to Fetters's criminal proceeding. The issues presented at the *Heck* hearing involved questions of law, which we review de novo. (*Gavin W. v. YMCA of Metropolitan Los Angeles* (2003) 106 Cal.App.4th 662, 669–670 [reviewing de novo trial of special defense where there were no disputed factual issues resolved by trial court].)

### II.    Fetters's section 1983 claim is barred

*Heck*, *supra*, 512 U.S. 477, bars a section 1983 claim if it is inconsistent with a prior criminal conviction or sentence arising out of the same facts, unless the conviction or sentence has been subsequently resolved in the plaintiff's favor. (*Id*. at pp. 486–487.) In essence then, *Heck* requires the reviewing court to answer three questions: (1) Was there an underlying conviction or sentence relating to the section 1983 claim? (2) Would a "judgment in favor of the plaintiff in the section 1983 action 'necessarily imply' . . . the

invalidity of the prior conviction or sentence?" (3) "If so, was the prior conviction or sentence already invalidated or otherwise favorably terminated?"[6] (*Magana v. County of San Diego* (S.D.Cal. 2011) 835 F.Supp.2d 906, 910 (*Magana*).) In *Yount v. City of Sacramento* (2008) 43 Cal.4th 885, 893–894 (*Yount*), our Supreme Court adopted *Heck*, *supra*, 512 U.S. 477.

Here, we find that (a) there was an underlying conviction and/or sentence relating to Fetters's section 1983 claim for the purposes of the *Heck* inquiry, (b) a judgment in favor of Fetters in the section 1983 action would necessarily imply that the prior

---

[6] The trial court, based on a subsequent post-*Heck* decision by the United States Supreme Court, *Wallace v. Kato* (2006) 549 U.S. 384 [127 S.Ct. 1091, 166 L.Ed.2d 973], concluded that Fetters's section 1983 claim was not barred by *Heck* because there was no underlying conviction that could be attacked since the juvenile court later allowed Fetters to change his plea and dismissed the petition. The trial court's conclusion was based on a misreading of *Heck* and *Wallace*. In *Heck*, the court did not limit its holding to a criminal conviction, but repeatedly stated that its holding applied to a "conviction *or sentence*." (*Heck*, *supra*, 512 U.S. at pp. 486, 487, 488, 489, & 490, italics added.) The court in *Heck* did not limit the scope of either "conviction" or "sentence," but left those terms undefined. (*Id. passim*.) In *Wallace*, the court did not clarify what is meant by a "conviction or sentence" for purposes of the *Heck* bar. (*Wallace*, *passim*.) Instead, the court was focused entirely on when a claim for false arrest or false imprisonment accrues, holding that *Heck* does not apply to "an anticipated future conviction," stating that "the *Heck* rule for deferred accrual is called into play only when there exists a 'conviction or sentence that has *not* been . . . invalidated.'" (*Id.* at p. 393.) Here, there was no anticipated future conviction. Rather, there was an effective conviction and an informal sentence. As a result, the central issue is whether the subsequent withdraw of that admission following completion of the sentence was a favorable termination of the criminal proceeding.

In other words, based on its misreading of *Heck*, *supra*, 512 U.S. 477 and *Wallace v. Kato*, *supra*, 549 U.S. 384, the trial court erred in its analysis by collapsing two separate inquiries under *Heck*—whether there ever was a conviction or sentence and whether that prior conviction or sentence was subsequently invalidated or otherwise terminated in Fetters's favor. As discussed in more detail herein, there was a "conviction or sentence" (as that term has been interpreted by both California and federal courts) that could be collaterally attacked by Fetters's section 1983 action, a "conviction or sentence" that was not resolved in Fetters's favor as that concept is understood under California law and relevant federal case law.

9

conviction or sentence was invalid, and (c) Fetters's prior conviction or sentence was not invalidated or terminated in his favor.

### A.  *Fetters was convicted and/or sentenced for brandishing*

Fetters contends that his "admits" plea in the criminal proceeding was of no meaningful significance.  Specifically, Fetters argues that because his plea was made "[**p**]**ursuant to People vs. West** [(1970) 3 Cal.3d 595]," it was a plea of nolo contendre and, as such, it did not admit the truth of the factual predicates for the petition's allegations, thereby rendering it of no consequence to his subsequent section 1983 claim. Fetters's argument is unpersuasive for several reasons.

First, a plea entered pursuant to *People v. West*, *supra*, 3 Cal.3d. 595, does not mean that the plea was necessarily a nolo contendre plea.  Although the facts of *West* did involve a nolo contendre plea, *West*'s holding was not limited to such pleas.  In *West*, our Supreme Court was not concerned with nolo contendre pleas or guilty pleas per se; rather, it was focused on how a defendant came to offer any plea—either a guilty plea or a nolo contendre plea.  More specifically, the *West* court was concerned with plea bargains.  As the very first sentence of the opinion makes clear, the underlying purpose of the decision was to legitimize plea bargains and clarify the procedure by which such pleas should be entered:  "We undertake here to confirm the legality of the plea bargain and to set up procedures for its acceptance or rejection in the strong light of full disclosure."  (*Id*. at p. 599.)[7]  Because the court in *West* was concerned with plea bargains, it repeatedly stressed that its holding applied to "a plea of guilty or nolo contendre."  (*Id*. at pp. 600, 604, 610, 612, 613.)  In other words, when the September 2009 minute order states that Fetters's plea was made "[**p**]**ursuant to People vs. West**," it simply means that the plea was the result of a plea bargain.  (See *People v. Collins* (2001) 26 Cal.4th 297, 309, fn. 4.)

---

[7] At the time *People v. West*, *supra*, 3 Cal.3d. 595 was decided, plea bargains needed to be legitimized and the proper procedure settled, because, although such arrangements were in "widespread use," they were often regarded as "constitutionally suspect."  (*Id*. at p. 605.)

Second, as the court in *People v. West*, *supra*, 3 Cal.3d. 595, emphasized, whether the bargained-for plea is guilty or nolo contendre, it is an admission of the truth of the facts in the petition: "A defendant who knowingly and voluntarily pleads guilty or nolo contendere can hardly claim that he is unaware that he might be convicted of the offense to which he pleads; his plea demonstrates that he not only knows of the violation but is also prepared to admit each of its elements." (*Id*. at p. 612.) In other words, even if Fetters's plea was nolo contendre, it would still indicate his willingness to admit all of the elements of the brandishing charges. (See *Nuno v. County of San Bernardino* (C.D.Cal. 1999) 58 F.Supp.2d 1127, 1135 [for *Heck* analysis, nolo contendere plea "has the same effect as a guilty plea or jury verdict of guilty"].) This very point was recently emphasized by our Supreme Court in *In re Alonzo J*. (2014) 58 Cal.4th 924: "In a [juvenile] delinquency proceeding, there is *no* basis to conclude that the legal effect of a no contest plea differs in any way from that of an admission. . . . Thus, *both a no contest plea and an admission have the effect of establishing the truth of the petition's allegations . . . .*" (*Id*. at p. 934, fn. omitted, italics added.) Indeed, at the *Heck* hearing, Fetters's counsel testified repeatedly that his client "admitted to the factual basis" that served as the foundation for the brandishing charges.

Third, even if there was a meaningful distinction between a guilty plea (or an admission in the context of a juvenile case) and a plea of nolo contendre with regard to the truth of the predicate facts, Fetters's plea was not a nolo contendre plea. The September 2009 minute order contains two boxes with regard to the criminal petition: "admits" or "pleads no contest." The box for "pleads no contest" is unchecked. The box for "admits," however, is checked. As a result of Fetters's admission, the petition was deemed "true" and, accordingly, "sustained."

Fourth, even if Fetters's plea could reasonably be construed as nolo contendre, such a plea constitutes a conviction subject to an inquiry under *Heck*, *supra*, 512 U.S. 477. In *Yount*, *supra*, 43 Cal.4th 885—the decision adopting *Heck*—the plaintiff entered a plea of no contest to driving under the influence and, among other things, was placed on probation. (*Yount*, at p. 891.) The court regarded plaintiff's unelaborated, bare plea of no

11

contest as a criminal conviction for purposes of its analysis of *Heck*: "To the extent the Court of Appeal believed that *Heck* was inapplicable here merely because Yount had entered a no contest plea without a preliminary hearing and without explicit identification of which of the multiple acts of resistance formed the factual basis for his conviction, it was mistaken." (*Yount*, at p. 895.)

Fifth, even if Fetters's "admits" plea did not somehow constitute a conviction, he did receive a sentence, six months of informal probation. Both California and federal courts outside the *Heck* context regard probation as a "form of punishment": "'While probation may be considered a mild form of ambulatory punishment imposing meaningful restraints, its true nature is an act of judicial grace. The [L]egislature has granted to the judiciary discretionary power to grant probation as a means of testing a convicted defendant's integrity and future good behavior. Unlike parole, granted by an administrative agency, probation is granted by the court when the sentencing judge deems the protection of society does not demand immediate incarceration. It is not granted because of any merit or worthiness of the wrongdoer.'" (*In re Marcellus L.* (1991) 229 Cal.App.3d 134, 142, italics omitted; see *People v. Rodriguez* (1990) 51 Cal.3d 437, 442 [describing a probationer as having only "conditional liberty"]; see also *United States v. Bosser* (9th Cir. 1989) 866 F.2d 315, 316–317 [Hawaii's "deferred-acceptance rule," which imposes a "probation-like sentence" is a "form of punishment"]; *United States v. Sylve* (9th Cir. 1998) 135 F.3d 680 [Washington's deferred prosecution program is a "form of punishment"].)

In sum, the first inquiry under *Heck*, *supra*, 512 U.S. 477 is answered in the affirmative: there was a conviction and a sentence, which, because it involved the same set of facts and circumstances, related directly to Fetters's subsequent section 1983 claim. We turn now to whether a judgment in Fetters's civil action would necessarily imply the invalidity of his conviction and sentence.

*B.      A judgment for Fetters in his section 1983 action would necessarily imply the invalidity of his conviction and sentence*

The Fourth Amendment's prohibition on "unreasonable . . . seizures" protects individuals from excessive force in the context of an arrest or seizure.  (U.S. Const., 4th Amend.; see *Graham v. Connor* (1989) 490 U.S. 386, 394 [109 S.Ct. 1865, 104 L.Ed.2d 443] (*Graham* ).)  *Graham* explained that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ."  (*Id*. at p. 395.)

The United States Supreme Court has "long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  (*Graham*, *supra*, 490 U.S. at p. 396.)  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.  [Citation.] . . . 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' [citation] violates the Fourth Amendment.  The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  (*Id*. at pp. 396–397.)

"As in other Fourth Amendment contexts, however, the 'reasonableness' inquiry in an excessive force case is an objective one:  the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.  [Citations.]  An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional."  (*Graham*, *supra*, 490 U.S. at p. 397.)

In *Yount*, *supra*, 43 Cal.4th 885, our Supreme Court held that an arrestee's section 1983 excessive force claim was barred under *Heck*, *supra*, 512 U.S. 477.  In that case

13

Steven Yount suffered injuries when a police officer, Thomas Shrum, shot him in the buttocks while trying to transport him to jail following his arrest for driving under the influence. (*Yount*, at p. 888.) Yount—struggling, swearing and yelling at officers—had been placed in the patrol car. After he shattered the window by kicking it, officers attempted to transfer Yount to another car. During the ensuing struggle Yount kicked an officer in the groin and spat on him. Officers succeeded in restraining Yount's legs and ankles, but he still tried to bite, kick and spit at them. Officer Shrum, intending to subdue Yount with his taser, mistakenly drew his pistol and shot him. (*Id.* at pp. 890–891.)

Yount, who was charged with driving under the influence, violent resistance and battery on a peace officer, pleaded no contest to driving under the influence and a single count of misdemeanor resisting arrest. He also stipulated to a factual basis for the plea without a recitation of what those facts were. (*Yount*, *supra,* 43 Cal.4th at p. 895.) Yount subsequently sued Officer Shrum and the City of Sacramento for violating his civil rights, alleging, when he was shot, he was **"**arrested, handcuffed, and hobbled at the time and was not then attempting to interfere with the officers; that Yount at no time posed any reasonable threat of violence to Officer Shrum or did anything to justify the force used against him; and that the force used against him was excessive, unnecessary, and unlawful." (*Id.* at pp. 891–892.) The trial court ruled that Yount's section 1983 claim was barred under *Heck*, *supra*, 512 U.S. 477. The Court of Appeal reversed, "finding the possibility that Officer Shrum's alleged use of excessive force may have been temporally distinct from the acts that formed the basis of Yount's no contest plea to resisting the officers sufficient to avoid the *Heck* bar." (*Yount*, at p. 888.)

The *Yount* court, affirmed the Court of Appeal's decision, but only in part. Building off of the notion of a temporal distinction, the court in *Yount*, *supra*, 43 Cal.4th 885 found that although there was one "'continuous chain of events,'" those events gave rise to "'two isolated factual contexts . . . , the first giving rise to criminal liability on the part of the criminal defendant, and the second giving rise to civil liability on the part of the arresting officer.'" (*Id*. at p. 899.) On the one hand, Yount's section 1983 claim was barred as inconsistent with his conviction for driving under the influence and a single

14

count of misdemeanor resisting arrest "to the extent it alleges that Officer Shrum lacked justification to arrest him or to respond with reasonable force to his resistance." (*Ibid*.) On the other hand, Yount's claim regarding the use of deadly force following his arrest was not barred by *Heck*, *supra*, 512 U.S. 477: "the record at the *Heck* hearing did not support the use of deadly force against Yount, nor did the criminal conviction in itself establish a justification for the use of deadly force." (*Yount*, at p. 898.) In deciding to bar part of Yount's section 1983 claim, the court noted that Yount had "obtained substantial benefit from his general plea. . . . It would be anomalous to construe Yount's criminal conviction broadly for criminal law purposes so as to shield him from a new prosecution arising from these events but then, once he had obtained the benefits of his no contest plea, to turn around and construe the criminal conviction narrowly so as to permit him to prosecute a section 1983 claim arising out of the same transaction." (*Id.* at p. 897.)

In recognizing the role that temporality plays in the *Heck* analysis, the court in *Yount*, *supra*, 43 Cal.4th 885, relied upon *Susag v. City of Lake Forest* (2002) 94 Cal.App.4th 1401 (*Susag*). In *Susag*, the court affirmed summary judgment for the deputies and the municipalities because the plaintiff, who was convicted of resisting arrest, "alleged no claims of excessive force that took place *after* he was finally subdued and placed in the patrol car." (*Id*. at p. 1410, italics added.) As a result, the plaintiff's allegations that he was subjected to excessive force, if proven, would necessarily imply the invalidity of his conviction for resisting an officer. (*Id*. at p. 1412.) In *Susag*, as in *Yount*, the court identified several public policy concerns that compelled its holding: Susag could not profit from his own illegal act and should bear the sole responsibility for the consequences of his act, and a determination contrary to the result in the criminal proceedings would engender disrespect for the courts and discredit the administration of justice. (*Susag*, at p. 1412.)

Here, specific factual allegations in Fetters's complaint (Sorrow used "excessive and unreasonable force") are necessarily inconsistent with the validity of his admission in his criminal proceeding that he brandished the imitation firearm in a threatening manner against Sorrow in such a way as to cause "a reasonable person apprehension and fear of

15

bodily harm." In his civil complaint and in his testimony at the *Heck* hearing, Fetters denied brandishing the imitation firearm in any way against Sorrow. Put a little differently, Fetters's admissions in his criminal proceeding established a justification for Sorrow's split-second use of deadly force—he admitted brandishing an imitation firearm that put Sorrow in reasonable fear of his life.

Moreover, unlike in *Yount*, there were not two isolated factual contexts, but one continuous and very brief factual situation that lasted just seconds. To try to parse the relevant facts at issue here into two separate and distinct incidents, as Fetters attempts to do, would be to engage in the kind of "temporal hair-splitting" that California and other courts correctly refuse to perform. (*Truong v. Orange County Sheriff's Dept.* (2005) 129 Cal.App.4th 1423, 1429.) In *Truong*, the Court of Appeal affirmed the trial court's finding that plaintiff's section 1983 claims were barred because "[t]his was not a case where the acts alleged to be violations of plaintiff's civil rights occurred hours, or even minutes after the act which led to the plaintiff's conviction; the acts occurred mere moments later." (*Ibid.*) Similarly, in *Smith v. City of Hemet* (9th Cir. 2005) 394 F.3d 689, the Ninth Circuit recognized that an allegation of excessive force by a police officer would not be barred by *Heck*, *supra*, 512 U.S. 477 if it were distinct temporally (or spatially) from the factual basis for the person's conviction. (*Smith*, at p. 699). For example, the *Smith* court noted that "Smith would be allowed to bring a § 1983 action . . . if the use of excessive force occurred *subsequent* to the conduct on which his conviction was based." (*Id.* at p. 698.) In other words, where there is "no break" between a plaintiff's "provocative act . . . and the police response that he claims was excessive," section 1983 claims are barred under *Heck* because such claims would necessarily call into question the criminal conviction. (*Cunningham v. Gates* (9th Cir. 2002) 312 F.3d 1148, 1155; see *Beets v. County of Los Angeles* (2012) 669 F.3d 1038, 1044–1045 [affirming *Heck* preclusion because "no separation" between criminal actions and alleged "excessive force"].) Here, there was no meaningful temporal break between the provocative act that Fetters admitted to in his criminal proceeding—brandishing an

16

imitation firearm so as to put Sorrows in reasonable fear of his life—and the use of force by Sorrows that he claims was excessive and unreasonable.

In short, a verdict in Fetters's favor on his section 1983 claim "would tend to undermine" (*Beets v. County of Los Angeles*, *supra*, 669 F.3d at p. 1040) his conviction and sentence: if Sorrow was found under the Fourth Amendment's "reasonableness" standard to have used excessive force it would necessarily suggest that Fetters's conviction for brandishing a imitation firearm in such a way as to cause a reasonable person apprehension or fear of bodily harm was without a basis in fact, and that is all that is required under this prong of the *Heck* inquiry. The *Heck* inquiry does not require a court to consider whether the section 1983 claim would establish beyond all doubt the invalidity of the criminal outcome; rather, a court need only "consider whether a judgment in favor of the plaintiff would necessarily *imply* the invalidity of his conviction or sentence." (*Heck*, *supra*, 512 U.S. at p. 487, italics added.) As the Ninth Circuit has clarified, *Heck* bars suits "based on *theories* that 'necessarily imply the invalidity of [the plaintiff's] conviction[s] or sentence[s].'" (*Cunningham*, *supra*, 312 F.3d at p. 1153, italics added.)[8]

Since a favorable verdict on the section 1983 would tend to undermine or imply the invalidity of Fetters's conviction and/or sentence, we need to consider next whether

---

[8] Fetters attempts to convince us that his section 1983 claim did not necessarily imply that his conviction and/or sentence was invalid by relying on *Estate of Srabian v. County of Fresno* (E.D.Cal. 2012, Dec. 12, 2012, No. 1:08-CV-00336-LJO-SMS) 2012 WL 5932938, which found that brandishing was not inconsistent with an award in an excessive force section 1983 case. Fetters's reliance is misplaced because the brandishing statute at issue in that case (Pen. Code, § 417, subd. (a)(2)) is significantly different than the one at issue here (Pen. Code, § 417.4). In *Srabian*, the brandishing statute at issue does not require that a victim be put in reasonable fear of bodily harm; it merely requires that a person draw or exhibit a firearm "in a rude, angry, or threatening manner." (Pen. Code, § 417, subd. (a)(2).) In order to receive probation, Fetters admitted to Penal Code section 417.4, which meant that he admitted that he brandished an imitation firearm in such a way as to put Sorrow in reasonable fear for his life. As a result, a verdict finding that Sorrow used unreasonable force would necessarily call into question Fetters's admission.

Fetters's criminal proceeding was terminated in his favor as that concept is understood in a legal sense. From a practical and subjective perspective, Fetters's criminal proceeding was undoubtedly resolved in his favor—he did not have to serve any jail time and the petition was ultimately dismissed clearing Fetters's way forward in life. But, as we discuss in the next section, from a legal perspective, the criminal proceeding was not resolved in Fetters's favor.

### C.      *Fetters's criminal proceeding was not terminated in his favor*

In order to affirm the trial court's decision below, we would need to conclude that the dismissal of the criminal petition against Fetters following his successful completion of probation was tantamount to an acquittal. This we cannot do. As explained in more detail below, the law required Fetters to show that there was not even a residue of doubt that he was innocent of the brandishing charges. Fetters, however, could not make such a showing.

First, there is scant indication from Fetters himself in the criminal proceeding that he was innocent. With the advice of counsel, he changed his plea and "admit[ted]" the charges, and, in so doing, also admitted that he understood "the nature of the conduct alleged in the petition and the possible consequences of an admission," that his admission was "freely and voluntarily made," and that "there is a factual basis for [his] admission."

Second, and more critically, there is no indication from the dismissing parties— the juvenile court and the prosecutor—that they regarded Fetters as being innocent of the brandishing charges. In fact, the prosecutor was so convinced of Fetters's guilt that he only reluctantly agreed to informal probation.

Third, the petition was not ultimately dismissed because some exculpatory information came to light establishing Fetters's innocence. Rather, the petition was dismissed because Fetters successfully completed his sentence of informal probation. In exchange for admitting the truth of the petition, Fetters received a lesser sentence than he might have received if he had gone to trial and been found guilty.

18

Because there is more than a residue of doubt about Fetters's innocence, we cannot find that the criminal proceeding was terminated on a favorable basis for Fetters. Accordingly, his section 1983 claim is barred.[9]

> 1.     *In order to pursue his section 1983 claim Fetters was required to show a favorable termination of his criminal proceeding*

In *Heck*, *supra*, 512 U.S. 477, the United States Supreme Court held that a plaintiff cannot maintain a section 1983 action for excessive force absent proof that his or her conviction or sentence has been invalidated by appeal or other proceeding. (*Heck*, at 484–490.) The *Heck* court, citing to a California Supreme Court decision (*Carpenter v. Nutter* (1899) 127 Cal. 61), analogized a section 1983 claim in such circumstances to the common law cause of action for malicious prosecution, which similarly includes the termination of the prior proceeding in favor of the accused as an element of the cause of action. (*Heck*, at p. 484.) The favorable termination requirement "'avoids parallel litigation over the issues of probable cause and guilt . . . and it precludes the possibility of the claimant [*sic*] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.' [Citation.] Furthermore, 'to permit a convicted criminal defendant to proceed with a malicious prosecution claim would permit a collateral attack on the conviction through the vehicle of a civil suit.' [Citation.] This Court has long expressed similar concerns for finality and consistency and has generally declined to expand opportunities for collateral

---

[9] Although *Yount*, *supra*, 43 Cal.4th at p. 902, found that the *Heck* bar applies equally to state law tort claims, such as battery, the issue of whether all claims in the operative pleading at the time of the *Heck* hearing would be barred was not briefed below (or at least not included in the record submitted to us) on appeal. In addition, it is unclear from the record below whether Fetters could amend his claims to add claims that are not subject to the *Heck* bar. Accordingly, we remand for further proceedings consistent with our holding.

We decline the County's invitation to direct that further proceedings be heard before a different trial judge.

19

attack. [Citations] We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution." (*Id*. at pp. 484–486, fns. omitted.) Thus, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff *must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus* [citation]." (*Id*. at pp. 486–487, fn. omitted, italics added.) The requirement that the section 1983 plaintiff's conviction or sentence have been reversed, expunged, or invalidated "is called the 'favorable termination' requirement of *Heck*." (*S.E. v. Grant County Bd. of Educ*. (6th Cir. 2008) 544 F.3d 633, 637.)

In *Yount*, *supra*, 43 Cal.4th 885, our Supreme Court held, consistent with *Heck*, *supra*, 512 U.S. 477, that a plaintiff cannot maintain a section 1983 civil rights claim for excessive force absent proof that his/her conviction has been invalidated by appeal or other proceeding. (*Yount*, *supra*, at pp. 894–895.) In reaching its decision, the *Yount* court quoted extensively from the discussion in *Heck* analogizing section 1983 claims to malicious prosecution claims. (*Yount*, at pp. 893–894.) The *Yount* court adopted *Heck*'s favorable termination requirement even though such a requirement might have harsh consequences: "[T]his court has recently reiterated its concern about the use of civil suits to collaterally attack criminal judgments in the context of a convicted criminal defendant's civil action against his or her attorney for legal malpractice. [Citation.] In holding that a criminal defendant must obtain *exoneration* by postconviction relief as a prerequisite to obtaining relief for the legal malpractice that led to that conviction, we recognized that our ruling would preclude recovery 'even when ordinary collateral estoppel principles otherwise are not controlling, for example because a conviction was based upon a plea of guilty that would not be conclusive in a subsequent civil action

20

involving the same issues.' [Citation.] Our justification for a bar of that scope included the promotion of judicial economy and the ""'strong judicial policy'"" recognized in *Heck* itself ""'against the creation of two conflicting resolutions arising out of the same or identical transaction.'"" [Citation.] [¶] In light of the fact that *Heck* and California law express similar concerns about judicial economy and the avoidance of conflicting resolutions, we conclude that the [*Heck*] analysis in the preceding sections applies equally to Yount's common law claim for battery." (*Yount*, *supra*, at p. 902, italics added.)

It is undisputed that Fetters's conviction and/or sentence was not "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." (*Heck*, *supra*, 512 U.S. at p. 487.) However, as a result of Fetters's successful completion of his informal probation sentence, the petition was dismissed. As a result, we need to determine (a) whether this result constitutes a favorable termination under California law and (b) whether federal courts regard pretrial criminal diversion or informal probation programs similar to what Fetters participated in as favorable terminations sufficient to negate the *Heck* bar.

2.      *Under California law, a favorable termination of a criminal proceeding must indicate the plaintiff's innocence*

California courts have consistently held that favorable termination in the context of a malicious prosecution action requires a plaintiff to show more than a mere dismissal of the underlying action; he or she must show facts establishing his or her innocence. For example, in *Pattiz v. Minye* (1998) 61 Cal.App.4th 822, the court explained that "[t]he element of 'favorable termination' requires a termination reflecting the merits of the action and plaintiff's innocence of the misconduct. [Citation.] '"The theory underlying the requirement of favorable termination is that it tends to indicate the innocence of the accused. . . ." [Citation.]' [Citation.] 'Where a proceeding is terminated other than on the merits, the reasons underlying the termination must be examined to see if the termination reflects the opinion of either the court or the prosecuting party that the action

21

would not succeed.' [Citation.] [¶] Thus plaintiff must establish more than that he prevailed in the underlying action. [Citation.] He must prove a termination that reflects on his innocence. [Citation.] *If the resolution of the underlying action leaves some doubt concerning plaintiff's innocence or liability, it is not a favorable termination* sufficient to allow a cause of action for malicious prosecution." (*Id*. at p. 827, italics added.) In other words, for a malicious prosecution claim to proceed, the underlying action must reflect ""the opinion of someone, either the trial court or the prosecuting party, that the action lacked merit or if pursued would result in a decision in favor of the defendant.'" [Citation] [¶] . . . [¶] The test is whether or not the termination tends to indicate the innocence of the defendant or simply involves technical, procedural or other reasons that are not inconsistent with the defendant's guilt. [Citations.] The focus is not on the malicious prosecution plaintiff's opinion of his *innocence*, but on the opinion of the dismissing party." (*Cantu v. Resolution Trust Corp*. (1992) 4 Cal.App.4th 857, 881.)

The favorable termination requirement from malicious prosecution actions has been applied by California courts to section 1983 claims. In *Susag*, *supra*, 94 Cal.App.4th 1401, Cory Susag was tried and convicted of resisting an officer during an incident with the Orange County Sheriff's Department. (*Id*. at p. 1406.) After he was convicted, Susag filed a lawsuit against the deputies and the Sherriff's department, alleging a section 1983 claims and various state law claims (assault, battery, use of excessive force, false imprisonment, and intentional infliction of emotional distress). Susag's lawsuit arose from the same incident with the Orange County Sheriff for which he was convicted. (*Susag*, at p. 1407.) The trial court granted summary judgment for the defendants and the Court of Appeal affirmed concluding that Susag's section 1983 claim, as well as his state law claims, were "precluded by his standing conviction for resisting or obstructing a peace officer." (*Susag*, at pp. 1412–1413.) As the court in *Susag* explained, the termination of the underlying proceeding "must 'reflect[ ] on the merits of the action *and the plaintiff's innocence of the misconduct alleged*. [Citations.] When the proceeding terminates other than on the merits, the court must examine the reasons for termination to see if the disposition reflects the opinion of the court or the prosecuting

22

party that the action would not succeed. *If resolution of the underlying action leaves a residue of doubt about the plaintiff's innocence or liability, it is not a favorable termination. . . .'"* (*Id*. at p. 1411, italics added.)

The requirement that the underlying criminal action be resolved in such a way as to indicate the section 1983 plaintiff's innocence was recently considered in *Lujano v. County of Santa Barbara* (2010) 190 Cal.App.4th 801 (*Lujano*). *Lujano* is of particular significance here because it concerns the resolution of a criminal charge through informal probation. In that case, the plaintiff was arrested for obstructing a police investigation. (*Id*. at p. 804.) The charge was subsequently resolved before a petition was even filed by the plaintiff's agreement to six months informal probation under Welfare and Institutions Code section 654. (*Lujano*, at pp. 805, 807.) After successfully completing her probation, the plaintiff in *Lujano* brought a section 1983 action against the deputies and the county, among others. The trial court granted summary judgment to the defendants and the Court of Appeal affirmed. Noting that a favorable termination under California law requires a strong indication of the plaintiff's innocence, the court in *Lujano* found that acceptance of informal probation was "not a favorable termination allowing for civil tort liability." (*Lujano*, at p. 808.) The court explained as follows: "Lujano accepted section 654 management. In doing so, she consented to participate in counseling or education programs as well as, inter alia, temporary placement in shelter care facilities should that be merited. [Citation.] Moreover, successful completion of the specific program or programs delineated under section 654 would result in a bar to further prosecution for the offense. [Citations.] *Having elected to proceed under section 654, having submitted to the power of the state and its programs for counseling and education, and having obtained a shield to further prosecution upon successful completion of the program, Lujano may not now complain that she is barred from seeking civil redress under section 1983. Her option was to deny her culpability and put the state to its proof. [Citation.] What she may not do is take advantage of the leniency of the state and thereafter pursue a civil claim for damages.*" (*Id*. at p. 809.)

23

If the plaintiff in *Lujano, supra*, 190 Cal.App.4th 801, was prohibited by *Heck*, *supra*, 512 U.S. 477 from bringing her section 1983 claims even though a criminal petition was never filed against her (and correspondingly she was never convicted or even forced to enter a plea), then it logically and fairly follows that Fetters, who also accepted the leniency of the state[10] but only after admitting the allegations of the petition filed against him, is precluded from exploiting that leniency as legal vindication. To paraphrase *Yount, supra*, 43 Cal.4th at p. 897, because Fetters obtained substantial benefit from his "admits" plea, it would be anomalous to construe Fetters's plea and informal probation sentence broadly as adequate resolution for the criminal law charges against him "but then, once he had obtained the benefits of [that] plea, to turn around and construe the outcome of the criminal proceeding narrowly so as to permit him to prosecute a section 1983 claim arising out of the same [exact events]."

As discussed in more detail in the next section, by holding the criminal defendant and subsequent section 1983 plaintiff accountable for her choices—both those choices that landed her in the criminal justice system and those that allowed her to escape from that system with leniency and without the risk and expense of a trial on the merits—the court in *Lujano, supra*, 190 Cal.App.4th 801 effectively adopted the reasoning and logic underlying decisions by federal courts holding that informal resolution/pretrial diversion programs should not be considered a favorable termination of a criminal proceedings.

> 3.　*Federal courts do not regard the informal resolution of a criminal proceeding as necessarily a favorable termination*

A number of states, like California, allow for the resolution of various criminal charges through various informal mechanisms, such as probation and other pretrial diversion programs. Federal courts, both before and after *Heck, supra*, 512 U.S. 477, have evaluated such programs and have held that participation in them does not constitute a favorable termination that would permit a defendant to bring a subsequent section 1983

---

[10] Penal Code section 417.4 provides for a punishment of "not less than 30 days" in county jail. Instead of jail time or, as the prosecutor preferred, becoming a ward of the court, Fetters merely received six months informal probation.

claim. As discussed below, these courts do not regard a defendant's participation in these programs as akin to being acquitted or found innocent.

For example, in *Singleton v. City of New York* (2d Cir. 1980) 632 F.2d 185 (*Singleton*), the Court of Appeals for the Second Circuit considered a mechanism under New York Criminal Procedure "'adjournment in contemplation of dismissal.'" Under an adjournment in contemplation of dismissal, after the accused serves a probationary period, the charges are dismissed. The *Singleton* court likened the adjournment in contemplation of dismissal to a consent decree, reasoning that both leave open the question of guilt. (*Id.* at p. 193.) The court, however, refused to equate dismissal with acquittal. (*Ibid.*) The court found significance in the probationary period, calling it an unfavorable "period of observation . . . to determine whether the prosecutor's acquiescence in the adjournment was justified." (*Id.* at p. 194.) Regarding expungement of the records related to the charge, the court found this erased "the stigma that might otherwise be borne by the defendant," but did not constitute a finding of "'not guilty.'" (*Ibid.*)

Similarly, in *Roesch v. Otarola* (2d Cir. 1992) 980 F.2d 850 (*Roesch*), the Second Circuit held that dismissal of a Connecticut criminal prosecution under its "accelerated pretrial rehabilitation" program was not sufficiently favorable to support a section 1983 malicious prosecution claim. (*Roesch*, at p. 853.) In that case, the plaintiff was arrested for, among other things, breach of the peace and harassment. (*Id.* at p. 852.) After completing a two-year probationary period, the charges against the plaintiff were dismissed. (*Ibid.*) The district court dismissed the plaintiff's section 1983 claim and the Court of Appeals affirmed, reasoning that permitting "a criminal defendant to maintain a section 1983 action after taking advantage of accelerated rehabilitation, the program, intended to give first-time offenders a second chance, would become less desirable for the State to retain and less desirable for the courts to use because the savings in resources from dismissing the criminal proceeding would be consumed in resolving the constitutional claims." (*Roesch*, at p. 853.)

25

In *DeLeon v. City of Corpus Christi* (5th Cir. 2007) 488 F.3d 649, the plaintiff was charged with aggravated assault of a police officer, pleaded guilty, and received a deferred adjudication; the plaintiff then filed a section 1983 claim against the arresting officer. (*DeLeon*, at p. 651.) The plaintiff argued that his civil rights suit was not barred by *Heck*, *supra*, 512 U.S. 477 because under Texas's deferred adjudication program there is no conviction or finding of guilt—that is, "if he successfully completes his deferred adjudication period, the charge against him will be dismissed." (*DeLeon*, at pp. 652–653.) The Fifth Circuit affirmed the dismissal of the section 1983 claim, holding the "*a deferred adjudication order is a conviction for the purposes of Heck's favorable termination rule.*" (*Id*. at p. 656, italics added.) The *DeLeon* court explained that "although there is no finding of guilt, there is at least a judicial finding that the evidence substantiates the defendant's guilt, followed by conditions of probation that may include a fine and incarceration." (*Ibid*.)

In *Gilles v. Davis* (3d Cir. 2005) 427 F.3d 197, the Third Circuit found that the section 1983 claims of a plaintiff whose criminal charges had been resolved by participation in Pennsylvania's Accelerated Rehabilitation Disposition (ARD) program were barred by *Heck*, *supra*, 512 U.S. 477. (*Gilles*, at pp. 210–211.) In reaching its decision, the court in *Gilles* reasoned that although "[t]he ARD program is a court-supervised compromise," it nevertheless "imposes several burdens upon the criminal defendant *not consistent with innocence*," including among other things a probationary term. (*Id*. at p. 211, italics added.) Accordingly, the court held that even though "successful completion of the ARD program results in dismissal of the criminal charge and expungement of the arrest record," it is "not a favorable termination under *Heck*." (*Id*. at p. 211 & fn.13.)[11]

---

[11] The decision in *Gilles v. Davis*, *supra*, 427 F.3d 197 was in accord with prior decisions interpreting the ADR program. (See *Nardini v. Hackett* (E.D.Pa. Sept.19, 2001, No. 00 CV 5038) 2001 WL 1175130, at p. *4 [holding ARD program "not sufficiently favorable to satisfy the common law requirements for malicious prosecution"]; *Davis v. Chubb/Pac. Indem. Group* (E.D.Pa. 1980) 493 F.Supp. 89, 91–92 ["an A.R.D.

26

Federal district courts have construed similar pretrial diversion/informal probation programs in other states and have found them to exclude subsequent section 1983 claims under *Heck*, *supra*, 512 U.S. 477. For example, in *Bates v. McKenna*, (W.D.La. Aug. 13, 2012, No. 11–1395), 2012 WL 3309381, the court held that a plaintiff who voluntarily participated in and completed a pretrial intervention program after being arrested for interference with a police officer and resisting an officer was barred from raising a section 1983 claim for false arrest against those officers. The court in *Bates* noted that *Heck*'s favorable termination rule "is also applicable to pretrial programs such as pretrial diversion agreements, accelerated rehabilitation disposition programs, deferred adjudication orders, and pretrial intervention programs, wherein charges are dismissed only after the criminal defendant successfully completes a probationary period." (*Bates*, at p. *4.) The court concluded that the plaintiff's participation in the pretrial intervention program, which resulted in the dismissal of the plaintiff's criminal charges "after the successful completion of a probationary period," was a conviction for the purposes of *Heck*. (*Bates*, at pp. *4–5.) Similar conclusions have been reached with respect to pretrial diversion programs in Massachusetts and Kentucky. (*Cardoso v. City of Brockton* (D.Mass. 2015) 62 F.Supp.3d 185, 186; *Everage v. Whitaker* (E.D.Ky. Mar. 27, 2006, No. 05-CV-115-KKC) 2006 WL 782744 at p. *6.)[12]

---

disposition . . . [is not] a favorable termination" because it is not "'consistent with innocence'"].)

[12] Federal courts have also ruled similarly with regard to federal pretrial diversion programs. In *Cissell v. Hanover Ins. Co.* (E.D.Ky. 1986) 647 F.Supp. 757, the court granted summary judgment to state police officers who were sued under section 1983 for malicious prosecution because the plaintiff's voluntary participation in the federal pretrial diversion program was not a favorable termination of plaintiff's underlying criminal proceeding. The court, adopting the reasoning of *Singleton*, *supra*, 632 F.2d 185, explained: "'To hold otherwise would be to allow a criminal defendant to side-step criminal prosecution, to forego litigation of his guilt or innocence, to benefit from a rehabilitative program, and then to turn around and to use this process which was designed to help him as a sword against the state in a civil action.'" (*Cissell*, at p. 758, quoting *Lindes v. Sutter* (D.N.J. 1985) 621 F.Supp. 1197, 1201–1202). Similarly, in *Taylor v. Gregg* (5th Cir.1994) 36 F.3d 453 (*Taylor*), the Fifth Circuit affirmed summary

27

Fetters has not directed us to any California state court cases holding that participation in a pretrial diversion/informal probation program in exchange for an eventual dismissal of the charges constitutes a favorable termination under *Heck, supra,* 512 U.S. 477 or any other legal doctrine.[13]  He has, however, directed us to several federal cases holding that participation in pretrial diversion/informal probation programs did not, under *Heck,* bar a subsequent section 1983 claim.  We are not persuaded by those cases.

For example, one of the cases upon which Fetters relies is *McClish v. Nugent* (11th Cir. 2007) 483 F.3d 1231.  In that case, the section 1983 plaintiff was arrested for interfering with the arrest of another.  (*McClish,* at p. 1251.)  The charge was eventually dismissed pursuant to Florida's pretrial intervention program (PTI).  (*Ibid.*)  The district

_____

judgment against plaintiffs alleging a section 1983 claim.  The court in *Taylor* adopted the reasoning of *Singleton* and *Roesch* in holding that a federal "pre-trial diversion agreement" was not a favorable termination.  The court in *Taylor* explained that the plaintiffs' section 1983 claims were barred because by entering into the pretrial program they were "effectively foregoing their potential [section 1983 claim] in exchange for conditional dismissal of their criminal charges."  (*Taylor,* at p. 456.)

[13] Fetters has identified several California decisions that involve the withdrawal of a plea, but none of those cases (*People v. Scheller* (2006) 136 Cal.App.4th 1143; *People v. Superior Court* (*Garcia*) (1982) 131 Cal.App.3d 256; *People v. Haro* (2013) 221 Cal.App.4th 718; *People v. Uhleman* (1973) 9 Cal.3d 662) involve the analysis of a pretrial diversion program under *Heck, supra,* 512 U.S. 477.  Moreover, even leaving aside the absence of a pretrial diversion program, all of these cases are either factually inapposite or otherwise  unhelpful to Fetters's cause.  For example, in *Scheller, supra,* 136 Cal.App.4th 1143, the defendant after entering a guilty plea and then withdrawing that plea, was convicted in a jury trial.  (*Id.* at pp. 1146–1147.)  In *People v. Superior Court* (*Garcia*), the court held that when a defendant withdraws his guilty plea both the defendant and the prosecutor are returned to the status quo ante, allowing the prosecutor to not only restore counts dismissed pursuant to a plea agreement but also augment those restored counts by alleging special circumstances to warrant an even harsher punishment.  (*Id.* at pp. 258–259.)  The one California case upon which Fetters relies that does involve a dismissed juvenile petition, *Haro, supra,* 221 Cal.App.4th 718, says nothing about the consequences of a dismissed criminal action against a minor in a subsequent civil suit for damages arising out of the conduct that led to the arrest; *Haro* simply holds that a previously dismissed juvenile petition cannot not be used as a strike under the Three Strikes law in a subsequent criminal proceeding.  (*Id.* at pp. 721–724.)

28

court, in reliance on decisions by the Second, Third and Fifth Circuits (*Roesch*, *supra*, 980 F.2d 850, *Gilles*, *supra*, 427 F.3d 197; *Taylor*, *supra*, 36 F.3d 453) concluded that the plaintiff's "'participation in PTI . . . is not a termination in his favor and therefore, he is barred from bringing a § 1983 claim for false arrest.'" (*McClish*, at p. 1251.) The *McClish* court reversed, because the plaintiff "was never convicted of *any* crime." (*Ibid.*) The *McClish* court, however, reached its decision without ever discussing the decisions by the Second, Third, and Fifth Circuits relied upon by the district court, decisions in which the plaintiffs also were never formally convicted of any crime, but were found for purposes of the *Heck* inquiry to have been convicted due to their participation in the pretrial diversion program. As a result, the court in *McClish* never addressed the concerns that the courts in those cases and in *Lujano*, *supra*, 190 Cal.App.4th 801, found so important: that allowing a criminal defendant to use the leniency of the state's pretrial diversion program as both a shield (no risk of trial or further prosecution upon successful completion of pretrial program) and a sword (able to seek damages against the state in a subsequent civil suit) makes little sense from a practical or jurisprudential perspective.

Not only is the analysis in *McClish*, *supra*, 483 F.3d 1231, wanting in this regard, but the facts of that case are readily distinguishable from the case at bar. Here, in contrast to *McClish*, there was a conviction and a sentence. Fetters entered a plea equivalent to a guilty plea. As a result of this plea, he was sentenced to six months of informal probation. In brief, there was no indication in the instant criminal proceeding of Fetters's innocence, where there may have been one in *McClish*.

Fetters also relies upon *Butler v. Compton* (10th Cir. 2007) 482 F.3d 1277. In *Butler*, as in *McClish*, *supra*, 483 F.3d 1231, there is no discussion of the public policy concerns discussed in *Lujano*, *supra*, 190 Cal.App.4th 801. Moreover, the facts in *Butler* are readily distinguishable from those at issue here. In *Butler*, the plaintiff brought a section 1983 suit alleging various Fourth Amendment violations stemming from his arrest for burglary. The charges against the plaintiff, however, were later dismissed as part of a plea agreement in which he agreed to plead guilty to three unrelated burglary charges stemming from a completely different incident. (*Id.* at pp. 1279–1280.) In

29

holding that *Heck, supra*, 512 U.S. 477 did not bar plaintiff's section 1983 action, the court in *Butler* emphasized that plaintiff did "not challenge any conduct relating to his conviction on the three burglary charges to which he pled guilty," but that "[h]is sole challenge is to the constitutionality of . . . conduct during his arrest for the burglary charges that were dismissed." (*Butler*, at p. 1280.) Accordingly, the court found that "[t]here is no related underlying conviction therefore that could be invalidated by [plaintiff's] § 1983 action." (*Id.* at p. 1280.) In contrast, the prosecutor in Fetters's criminal proceeding did not agree to dismiss the charges against Fetters upon his successful completion of probation in exchange for Fetters's agreement to plead guilty to charges arising out of a separate and wholly unrelated incident. Instead, Fetters accepted a plea agreement that allowed him to resolve the charges that stemmed from the arrest that is the subject of his section 1983 claim. In other words, Fetters's conviction and sentence, unlike the one in *Butler*, arise out of the same incident that led to the original charges. In short, Fetters's reliance on *Butler* is misplaced because that case is neither apposite nor instructive.

Fetters also relies on two district court decisions, *Magana, supra*, 835 F.Supp.2d 906; and *Medeiros v. Clark* (E.D.Cal. 2010) 713 F.Supp.2d 1043. In each instance, the district court ruled that the section 1983 claims were not barred by *Heck, supra*, 512 U.S. 477 even though the plaintiffs had participated in pretrial diversion programs. In both cases, the district court found that *Heck* did not bar the plaintiffs' civil rights claims because there was no conviction or even any admission of wrongdoing: "Magna appeared in juvenile court . . . and *denied all charges and allegations*" (*Magana*, at p. 908, italics added); "[Medeiros] *refused to plead guilty* to any of the frivolous charges" (*Medeiros*, at p. 1046, italics added). Here, in contrast to both of these cases, Fetters "admit[ted]" the charges alleged against him.

Both *Magana* and *Medeiros* also found that *Heck* did not apply because the plaintiff in each case did not have "recourse to the habeas statute." (*Magana, supra*, 835 F.Supp.2d at p. 911; see *Medeiros, supra*, 713 F.Supp.2d at pp. 1055–1056 [same].) Both courts based their decision on a Ninth Circuit opinion, *Nonnette v. Small* (9th Cir.

30

2002) 316 F.3d 872 (*Nonnette*). (*Magana*, at p. 912; *Medeiros*, at pp. 1055–1056.) Based on these cases, Fetters argues that because he "was not in custody during the *Heck* hearing, and habeas relief was unavailable, *Heck* did not bar his [section] 1983 suit." We are unconvinced by Fetters's argument.

First, the conclusion by *Nonnette*, *supra*, 316 F.3d 872, that *Heck*, *supra*, 512 U.S. 477 does not bar a claim when the plaintiff had no habeas remedy available is based, not on a definitive holding by a majority of the United States Supreme Court ruling in one case, but on a combination of concurring and dissenting opinions in two separate cases. (See *Nonnette*, *supra*, at pp. 876–877; see also *Heck*, at pp. 498–500 (conc. opn. of Souter, J.); *Spencer v. Kemna* (1998) 523 U.S. 1, 19–21 [118 S.Ct. 978, 140 L.Ed.2d 43] (conc. opn. of Souter, J., joined by O'Connor, Ginsburg, and Breyer, JJ.); *id.* at p. 21 (conc. opn. of Ginsburg, J.); *id.* at p. 25, fn. 8 (dis. opn. of Stevens, J.).) Second, subsequent decisions by the Ninth Circuit have sharply circumscribed *Nonnette*. (See *Guerrero v. Gates* (9th Cir. 2006) 442 F.3d 697, 704–705.) Third, given the patchwork nature of the basis for its holding, the *Nonnette decision* has not been universally endorsed by other circuits. In fact, the First, Third, Fifth, Sixth, and Eighth Circuits have all concluded that the language in *Heck* makes it clear that where favorable termination cannot be shown, a petitioner is barred regardless of whether a habeas remedy is or ever was available. (See *White v. Gittens* (1st Cir. 1997) 121 F.3d 803, 806; *Williams v. Consovoy* (3d Cir. 2006) 453 F.3d 173, 177–178; *Gilles*, *supra*, 427 F.3d at pp. 209–210; *Randell v. Johnson* (5th Cir. 2000) 227 F.3d 300, 301; *Schilling v. White* (6th Cir. 1995) 58 F.3d 1081, 1086; *Entzi v. Redmann* (8th Cir. 2007) 485 F.3d 998, 1003.) Finally, we are neither bound nor inclined to accept Fetters's invitation to follow *Nonnette* and cases that share its reasoning, because, although the United States Supreme Court has acknowledged that the circuits hold contrasting views regarding *Heck*'s application to section 1983 petitioners not in custody, it has chosen not to provide any guidance. (See *Muhammad v. Close* (2004) 540 U.S. 749, 752, fn. 2 [124 S.Ct. 1303, 158 L.Ed.2d 32].) Fetters has obtained the justice to which he is entitled.

31

**DISPOSITION**

The judgment and the attorney fees order are reversed.  The parties are to bear their own costs on appeal.

CERTIFIED FOR PUBLICATION.


JOHNSON, J.


We concur:


ROTHSCHILD, P. J.


CHANEY, J.