Filed 4/19/2017

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF
CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| PHILLIP BARANCHIK et al., | B268133 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. YC067105) |
| v. | |
| MARIO FIZULICH et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los
Angeles County, Phrasel L. Shelton (Retired Judge of the
San Mateo Sup. Ct. assigned by the Chief Justice pursuant
to art. VI, § 6 of the Cal. Const.) and Stuart M. Rice, Judges.
Affirmed.

The Beck Law Firm and Thomas E. Beck, for Plaintiffs
and Appellants.

Manning & Kass, Ellrod, Ramirez, Trester, Mildred K. O'Linn, Tony M. Sain and Mae G. Alberto, for Defendants and Respondents.

—————————————

In 2008, defendants and respondents[1] Redondo Beach police officers Mario Fizulich, Phillip Ho, and Ellen Tumbocon interacted with plaintiffs and appellants Phillip Baranchik and Eric Baranchik.[2] The details of the interaction and subsequent arrests and criminal prosecutions are more fully described later in this opinion. Based on the interaction, Phillip, Eric, and Tiffeney Pyle[3] filed a federal civil action asserting claims for violation of their constitutional rights under 42 U.S.C. § 1983, including excessive force, false arrest, and malicious prosecution, among other claims. The parties stipulated to allow plaintiffs to dismiss their federal case and refile in state

—————————————

[1] The City of Redondo Beach, Redondo Beach Police Chief W. Joseph Leonardi, Sergeant Rody Contreras, Officers John Anderson, Regina Flores, and Sharon Rose were originally named as defendants, but they are not parties to this appeal.

[2] Because Phillip Baranchik and Eric Baranchik share the same last name, we refer to them by first name.

[3] Plaintiff Tiffeney Pyle was Phillip's fiancé at the time of the events in question, but she is not a party to this appeal. For consistency, we also refer to Tiffeney by her first name.

court.  After the case was refiled, the trial court granted a motion to strike Eric's malicious prosecution claim and later denied a motion to reinstate that claim.  The court also granted summary adjudication in favor of defendants on Eric's excessive force claim and Phillip's false arrest claim.

Phillip and Eric appeal from the judgment.  Phillip contends the trial court erroneously granted summary adjudication on his false arrest claim.  Eric contends the court erroneously concluded his excessive force claim was barred as a matter of law under *Heck v. Humphrey* (1994) 512 U.S. 477, 486–487 (*Heck*).  Eric also contends the court erred when it denied his request to reinstate his claim for malicious prosecution.  We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### Underlying incident

Phillip, Eric, and Tiffeney were at a bar on the Redondo Beach pier the evening of September 18, 2008.  They ordered more than one round of drinks.  Phillip and Tiffeney were involved in an argument with other patrons at the bar.  The incident was reported to the Redondo Beach Police Department.  A dispatch was issued about a bar fight.  Phillip left the bar and walked away from the pier.  Eric and Tiffeney followed shortly thereafter.

Officer Fizulich responded to the dispatch call around 11:40 p.m.  As he was responding, he was informed one of

3

the participants in the fight had left the bar. Officer Fizulich detained Phillip, who fit the description of the suspect involved in the bar fight. Officer Fizulich observed that Phillip had slurred speech and bloodshot, watery eyes, and he smelled the odor of alcohol coming from Phillip.

In the meantime, Eric and Tiffeney were walking toward Officer Fizulich and Phillip. Two other officers also arrived on the scene—Officers Tumbocon and Ho. As Eric approached, he said, "That's my brother. What's going on here?" Officer Ho fired his taser at Eric, incapacitating him. When Tiffeney saw Eric get tased, she panicked, and ran around an outdoor shower area to get a better view of what was happening. Officer Tumbocon intercepted Tiffeney, pointing a taser at her and telling her to move back. Tiffeney responded by beginning to back up, but as she did so, she kicked her flip-flop off. The flip-flop and water from a puddle flew toward Officer Tumbocon. Officer Tumbocon believed Tiffeney was not complying with her commands and fired her taser at Tiffeney.

After Phillip, Eric, and Tiffeney had been handcuffed and seated on the curb, Officer Fizulich spoke with the bartender from the bar. The bartender identified the three as the individuals who were involved in a disturbance at the bar.

The officers arrested Phillip for public intoxication in violation of Penal Code section 647, subdivision (f),[4] but he

_____

[4] All further statutory references are to the Penal Code unless otherwise stated.

was not charged in a criminal complaint.  Eric was arrested and charged with (1) assaulting Officer Tumbocon in violation of section 243, subdivision (b); (2) resisting, obstructing, or delaying a peace officer in violation of section 148, subdivision (a)(1); and (3) public intoxication in violation of section 647, subdivision (f).  Phillip, Eric, and Tiffeney were all released from police custody by the following day.

## Eric's criminal trial, appeal, and dismissal

On October 14, 2008, Eric was charged with (1) assaulting Officer Tumbocon (section 243, subdivision (b)); (2) resisting, obstructing, or delaying a peace officer (section 148, subdivision (a)(1)); and (3) public intoxication (section 647, subdivision (f)).  Eric's jury trial took place in late 2009. Eric contended at his trial that he was not guilty because Officer Ho used excessive force by deploying his taser on Eric.  At the request of Eric's defense attorney, the jury was instructed with CALCRIM No. 2670 on the issue of excessive use of force.  The instruction states, in relevant part:  "The People have the burden of proving beyond a reasonable doubt that at least one of Ellen Tumbocon, Phillip Ho and/or Mario Fizulich was lawfully performing his or her duties as a peace officer.  If the People have not met this burden, you must find the defendants not guilty of Count 1, violation of Penal Code section 243(b) (Battery Against Peace Officer), and Count 2, violation of Penal Code section 148(a)

(Resisting Peace Officer, Public Officer or EMT). [¶] A peace officer is not lawfully performing his or her duties if he or she is unlawfully arresting or detaining someone or using unreasonable or excessive force when making or attempting to make an otherwise lawful arrest or detention." (CALCRIM No. 2670.) The jury acquitted Eric of the public intoxication and assault charges, but convicted him of resisting, obstructing, or delaying a peace officer in violation of section 148, subdivision (a)(1).

Eric's conviction was affirmed on appeal by the Appellate Division of the Los Angeles Superior Court on August 8, 2012. The most relevant paragraph from the opinion reads as follows: "Eric contends insufficient evidence supports his conviction because Officer Ho was not engaged in the lawful performance of his duties as a peace officer when he deployed the taser gun. However, resolution of this issue was a question of fact that was properly resolved by the jury in rendering its verdict. As a reviewing court, it is not our role to reweigh the evidence. (*People v. Duncan* [(2008)] 160 Cal.App.4th [1014,] 1018.) The People presented sufficient evidence to support Eric's conviction based on testimony that he failed to comply with Officer Ho's repeated orders to 'stop,' and by engaging in a physical altercation with Officer Ho while other officers attempted to conduct their investigation."

On April 9, 2014, the criminal trial court granted Eric's petition to dismiss his criminal conviction under section 1203.4.

6

## Federal lawsuit

Plaintiffs Phillip, Eric, and Tiffeney filed a civil complaint in federal district court on September 15, 2010, alleging civil rights violations under 42 U.S.C. § 1983, including a claim of malicious prosecution. The district court dismissed the malicious prosecution claim on March 29, 2011. In April 2012, the district court judge indicated he would allow limited time to both sides for trial, and he refused to continue the April 24, 2012 trial date. The parties negotiated a stipulation to allow plaintiffs to dismiss the federal case and refile in state court.

## State lawsuit

Plaintiffs filed their complaint in state court on May 16, 2012. The court sustained a demurrer and granted plaintiffs leave to amend. Plaintiffs filed a first amended complaint. The causes of action relevant to this appeal were all pursued under 42 U.S.C. § 1983, and, among other claims not relevant to this appeal, alleged the following claims: (1) the first cause of action by Eric against Officer Ho for unreasonable force (excessive force claim); (2) the fourth cause of action by Phillip against Officer Fizulich for false arrest (false arrest claim); and (3) the seventh cause of action by Eric against Officers Ho, Fizulich, and Tumbocon for malicious prosecution (malicious prosecution claim). Later, Judge Phrasel L. Shelton granted defendants' motion

7

to strike Eric's malicious prosecution claim, noting that plaintiffs had not been granted leave to add a new claim. Judge Stuart M. Rice subsequently denied Eric's motion for leave to file a second amended complaint to reinstate his malicious prosecution claim.

In June 2013, defendants filed a motion for summary judgment or adjudication, arguing that undisputed facts demonstrate they were entitled to judgment as a matter of law on all of plaintiffs' claims. They argued that Officer Fizulich was entitled to qualified immunity as to Phillip's false arrest claim because he reasonably believed that probable cause existed to arrest Phillip for public intoxication. They also argued that Eric's conviction of violating section 148 barred his excessive force claim against Officer Ho. Judge Rice granted summary adjudication as to each of Eric and Phillip's claims, and all but one of Tiffeney's claims.[5]

After the superior court granted Eric's petition for dismissal of his conviction pursuant to section 1203.4 in April 2014, Eric filed a November 2014 motion in the civil case, seeking to vacate the prior summary adjudication of his excessive force claim against Officer Ho. Eric's motion to vacate argued that circumstances had changed because his conviction had been dismissed, and he therefore was no longer barred from pursuing his excessive force claim against Officer Ho. Defendants opposed the motion and

_____

[5] As noted earlier, Tiffeney is not a party to this appeal.

renewed a motion for judgment on the pleadings, arguing that even if the dismissal of Eric's conviction meant that he could proceed with his civil action for excessive force, his claim was barred by the doctrine of collateral estoppel.[6] Judge Rice denied plaintiffs' motion to vacate the summary adjudication order. The court entered judgment in favor of defendants for causes of action asserted by Phillip and Eric, except for a claim asserted under *Monell v. New York City Dept. of Social Services* (1978) 436 U.S. 658, in the eleventh cause of action, which was dismissed without prejudice.

## DISCUSSION

### Standard of review

*Summary adjudication of false arrest and excessive force claims*

"A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) We review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court

---

[6] Appellants' opening brief argues that the court incorrectly applied collateral estoppel to Eric's excessive force claim. Because we conclude that the trial court correctly granted summary adjudication under *Heck*, we need not consider the collateral estoppel argument.

properly excluded) and the uncontradicted inferences the evidence reasonably supports.  [Citation.]  In the trial court, once a moving defendant has 'shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established,' the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff 'may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . .' [Citations.]"  (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476–477.)

*Denial of motion for leave to add a malicious prosecution claim*

"We review the trial court's denial of the motion for leave to file a second amended complaint for an abuse of discretion.  (*Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 242.)"  (*Ball v. FleetBoston Financial Corp.* (2008) 164 Cal.App.4th 794, 797.)  We never presume error; an appellant must affirmatively show error by an adequate record.  (*Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 447.)  In the absence of a proper record on appeal, the trial court's ruling is presumed correct and must be affirmed.  (See *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295–1296.)

## Phillip's false arrest claim

Phillip contends the court erroneously granted summary adjudication in favor of Officer Fizulich on his false arrest claim.  Phillip reasons he had offered evidence that he did not exhibit signs of intoxication, and defendants' evidence did not establish that he was unable to care for his own safety or the safety of others.

A peace officer may make a warrantless arrest when "[t]he officer has probable cause to believe that the person to be arrested has committed a public offense in the officer's presence."  (§ 836, subd. (a)(1).)  "The term 'probable cause' has an established meaning in connection with criminal proceedings, and signifies a level of proof below that of proof beyond a reasonable doubt, or even proof by a preponderance of the evidence."  (*People v. Hurtado* (2002) 28 Cal.4th 1179, 1188–1189.)  "'Reasonable cause to arrest exists when the facts known to the arresting officer would lead a reasonable person to have a strong suspicion of the arrestee's guilt.  [Citation.]  This is an objective standard.  [Citation.]'  [Citation.]  'It is the right to arrest that is being tested.  . . . The question with which we are concerned is not "why did the officer want to arrest this particular defendant?" but rather "was there reasonable cause to arrest this particular defendant?"  The arresting officer's secret intentions, hopes, or purposes have nothing to do with the legality of the arrest.  The legality [of the arrest] which is based upon reasonable cause is tested by objective standards . . . .'

[Citations.]  ""[S]ufficient probability [that a crime has been committed], not certainty, is the touchstone of reasonableness under the Fourth Amendment."" (*People v. Thompson* [2006] 38 Cal.4th [811,] 820.)" (*Levin v. United Air Lines, Inc.* (2008) 158 Cal.App.4th 1002, 1018.)  "If the facts that gave rise to the arrest are undisputed, the issue of probable cause is a question of law for the trial court." (*Ibid.*)

Any person "[w]ho is found in any public place under the influence of intoxicating liquor . . . , in a condition that he or she is unable to exercise care for his or her own safety or the safety of others" is guilty of disorderly conduct, a misdemeanor.  (§ 647, subd. (f).)  An officer has probable cause to place a person under arrest for violating section 647, subdivision (f), when the individual is intoxicated and in a public place, and the totality of circumstances demonstrates that he is unable to exercise care for his own safety or the safety of others.  (See, e.g., *People v. Lively* (1992) 10 Cal.App.4th 1364, 1369–1372 [reviewing cases and concluding that "[i]n an arrest for public intoxication, the totality of the circumstances must be considered in determining whether the intoxicated person can exercise care for his or her own safety or the safety of others"]; *People v. Wolterman* (1992) 11 Cal.App.4th Supp. 15, 20 [there was probable cause to arrest an individual for public intoxication, where the officers found him behind the wheel of a car parked on the shoulder of the road, he smelled of alcohol, had slow and garbled speech, his eyes were red and glassy,

and he was disoriented enough that after exiting the vehicle he wandered into a traffic lane].)

In support of their motion for summary judgment, defendants offered evidence that Phillip matched the description of the participant in the bar fight who had left the bar, and that Officer Fizulich detected an odor of alcohol coming from Phillip, and observed Phillip to have bloodshot, watery eyes and slurred speech. The only evidence Eric offered to dispute these facts was Phillip's booking photograph, which purported to demonstrate the absence of those objective signs of intoxication. This is insufficient to place into dispute Officer Fizulich's testimony about the objective signs that led him to reasonably believe that Phillip was intoxicated. Officer Fizulich also had a reasonable, objective basis to believe that Phillip was unable to exercise care for the safety of others based upon the initial fact that he matched the description of a participant in a bar fight—a fact that was later confirmed by the bartender. The undisputed facts before the court were sufficient to support the legal conclusion that Officer Fizulich had a reasonable basis to believe that Phillip was intoxicated and unable to care for the safety of others, in violation of section 647, subdivision (f).

**Eric's excessive force claim**

Eric contends the trial court erroneously concluded his excessive force claims against Officer Ho were barred under

13

*Heck, supra,* 512 U.S. at pp. 486–487. Eric first argues that *Heck* does not apply because a finding of excessive force would not necessarily invalidate his conviction under section 148, subdivision (a)(1). He further argues that because his conviction has been dismissed under section 1203.4, *Heck* would not apply because the criminal case resulted in a favorable termination.

We are not persuaded by either argument. The court correctly granted summary adjudication against Eric's excessive force claim, and the later dismissal of Eric's conviction pursuant to section 1203.4 does not qualify as a favorable termination that would lift the prohibition against pursuing a civil claim against Officer Ho.

*Claim for excessive force precluded under Heck*

The idea that a plaintiff cannot use a civil tort claim as a vehicle to challenge the validity of an outstanding criminal conviction "applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction . . . ." (*Heck, supra,* 512 U.S. at p. 486.) "In *Yount v. City of Sacramento* (2008) 43 Cal.4th 885 (*Yount*), our Supreme Court held, consistent with *Heck v. Humphrey, supra,* 512 U.S. 477 (*Heck*), that a plaintiff cannot maintain a section 1983 civil rights claim for excessive force absent proof that her conviction under Penal Code section 148, subdivision (a), has been invalidated by appeal or other proceeding." (*Lujano v. County of Santa Barbara* (2010) 190

14

Cal.App.4th 801, 806, fn. omitted.) "*Heck, supra,* 512 U.S. 477, bars a section 1983 claim if it is inconsistent with a prior criminal conviction or sentence arising out of the same facts, unless the conviction or sentence has been subsequently resolved in the plaintiff's favor. (*Id.* at pp. 486–487.) In essence then, *Heck* requires the reviewing court to answer three questions: (1) Was there an underlying conviction or sentence relating to the section 1983 claim? (2) Would a 'judgment in favor of the plaintiff [in the section 1983 action] "necessarily imply" . . . the invalidity of the prior conviction or sentence?' (3) 'If so, was the prior conviction or sentence already invalidated or otherwise favorably terminated?' [footnote omitted]." (*Fetters v. County of Los Angeles* (2016) 243 Cal.App.4th 825, 834–835 (*Fetters*), quoting *Magana v. County of San Diego* (S.D.Cal. 2011) 835 F.Supp.2d 906, 910.)

In *Yount*, our Supreme Court summarized *Heck's* analysis as follows: "Our discussion begins with *Heck, supra,* 512 U.S. 477, which first established that a section 1983 claim calling into question the lawfulness of a plaintiff's conviction or confinement is not cognizable until the conviction or confinement has been invalidated. (*Heck, supra,* at p. 483.) *Heck* analogized a section 1983 claim in such circumstances to the common law cause of action for malicious prosecution, which similarly includes the termination of the prior criminal proceeding in favor of the accused as an element of the cause of action. 'This requirement "avoids parallel litigation over the issues of

15

probable cause and guilt . . . and it precludes the possibility of the claimant [*sic*] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." [Citation.] Furthermore, "to permit a convicted criminal defendant to proceed with a malicious prosecution claim would permit a collateral attack on the conviction through the vehicle of a civil suit." [Citation.] This Court has long expressed similar concerns for finality and consistency and has generally declined to expand opportunities for collateral attack [citations]. We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution.' (*Heck*, *supra*, 512 U.S. at pp. 484–486, fns. omitted.)" (*Yount*, 43 Cal.4th 885, 893–894.)

Eric argues that defendants did not carry their burden on summary adjudication of demonstrating that his excessive force claim, if successful, would necessarily imply the invalidity of his conviction under section 148, subdivision (a)(1), for resisting, delaying, or obstructing a peace officer.[7] We disagree.

---

[7] Section 148, subdivision (a)(1) provides: "Every person who willfully resists, delays, or obstructs any . . .

The *Heck* court specifically included within its holding claims for damages "caused by actions whose unlawfulness would render a conviction or sentence invalid," and gave the following example: "A state defendant is convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a *lawful* arrest. (This is a common definition of that offense. See *People v. Peacock*, 68 N.Y.2d 675 (1986); 4 C. Torcia, Wharton's Criminal Law § 593, p. 307 (14th ed. 1981).) He then brings a § 1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures. *In order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted.* Regardless of the state law concerning res judicata, . . . the § 1983 action will not lie." (*Heck, supra*, 512 U.S. at p. 486, fn. 6, second italics added.) In California as well, "the lawfulness of the officer's conduct is an essential element of the offense of resisting, delaying, or obstructing a peace officer." (*Smith v. City of Hemet* (9th Cir. 2005) 394 F.3d 689, 695 (*Smith*); see also *People v. Jenkins* (2000) 22 Cal.4th 900, 1020 (*Jenkins*) [discussing "the well-established rule that when a statute makes it a crime to commit any act against a peace officer engaged in the performance of his or her duties, part of the corpus delicti of the offense is that the

---

peace officer, . . . in the discharge or attempt to discharge any duty of his or her office or employment, . . . shall be [guilty of a misdemeanor]."

officer was acting lawfully at the time the offense was committed"].) "Disputed facts relating to the question whether the officer was acting lawfully are for the jury to determine when such an offense is charged." (*Jenkins*, *supra*, at p. 1020.)

Eric argues the facts surrounding his claim are more analogous to those in *Smith*, where the Ninth Circuit permitted the plaintiff to proceed with a claim of excessive force despite pleading guilty to violating section 148. (*Smith*, *supra*, 394 F.3d at p. 699.) In *Smith*, the plaintiff's interaction with police had two distinct phases—an investigative phase and an arrest phase. During the investigative phase, when police responded to a call for assistance, plaintiff emerged onto his porch and refused to comply with officer commands to remove his hands from his pockets and put them in view of the officers to show he had no weapons. After police brought in a canine unit, the interaction moved into an arrest phase, when the canine unit and other officers went onto the porch to subdue and arrest plaintiff. On the porch, plaintiff continued resisting arrest, police pepper sprayed him, and a police dog bit him several times. (*Id.* at pp. 693–694.) The plaintiff pleaded guilty to violating section 148, subdivision (a)(1), but the record was silent as to the basis for his plea, and so it was possible that this conviction was based only on his actions during the investigative phase. The Ninth Circuit reasoned that if plaintiff had "pled guilty to § 148(a)(1) based on his behavior *after* the officers came onto the porch, during the

18

course of the arrest, his suit would be barred by *Heck*. [Citation.]" (*Id.* at p. 697.) In contrast, his claim would not be barred under *Heck* "if the use of excessive force occurred *subsequent to* the conduct on which his conviction was based. Specifically, [plaintiff] would be entitled to proceed below if his conviction were based on unlawful behavior that took place while he stood alone and untouched on his porch . . . ." (*Id.* at p. 698.) Relying on an earlier case, *Sanford v. Motts* (9th Cir. 2001) 258 F.3d 1117, 1119–1120 (*Sanford*), the *Smith* court noted that permitting the plaintiff's excessive force claim would not *necessarily* imply the invalidity of his section 148 conviction, because the purported excessive force could have taken place during the arrest phase, and not the investigative phase. (*Smith*, *supra*, 394 F.3d at p. 699.)

In *Sanford*, the Ninth Circuit concluded a plaintiff was not barred from bringing an excessive force claim against an officer who punched her in the face after she had already been handcuffed, because a judgment would not necessarily imply the invalidity of her conviction under section 148. (*Sanford*, *supra*, 258 F.3d at p. 1120 ["Excessive force used after an arrest is made does not destroy the lawfulness of the arrest"].) The *Smith* court reasoned that "under *Sanford*, as long as the officers were acting lawfully *at the time* the violation of § 148(a)(1) took place, their alleged acts of excessive force, whether they occurred *before* or *after* [plaintiff] committed the acts to which he pled, would not invalidate his conviction." (*Smith*, *supra*, 394 F.3d at p. 699.)

19

According to Eric, his section 148, subdivision (a)(1) conviction rested solely on a failure to obey the officers' verbal commands,[8] and was therefore based on conduct that occurred *before* the purported excessive use of force, specifically Officer Ho firing his taser at Eric and later pushing him against the squad car and twisting his wrists. Eric's reliance on *Smith* is unpersuasive because unlike the factual scenarios in *Smith* and *Sanford*, there is no separation between Eric's actions and Officer Ho's deployment of the taser on Eric. While Officer Fizulich was detaining Phillip, Eric approached the group on foot. As he approached, he said "That's my brother. What's going on here." While Eric disputes whether he posed any danger to anyone, he does not dispute that Officer Ho then fired his taser at Eric. To consider Eric's actions in approaching the officers as somehow distinct from Officer Ho's response in firing the taser is to view the incident too narrowly.

Instead, the factual scenario before us is more analogous to the incidents involved in *Fetters*, 243 Cal.App.4th 825, and *Truong v. Orange County Sheriff's Dept.* (2005) 129 Cal.App.4th 1423 (*Truong*). In both cases, appellate courts found that the plaintiffs' civil claims were barred under *Heck* based on their criminal convictions and the conclusion that a successful civil claim would necessarily

_____

[8] He argues that because the criminal jury acquitted him of battery (§ 243, subd. (b)), it implicitly rejected the prosecution's argument that Eric struck Officer Tumbocon's flashlight while approaching the officers.

imply the invalidity of the conviction. In *Truong*, the plaintiff had been arrested and booked for shoplifting. During booking, she resisted an order to disrobe and shower with the other inmates. Truong claimed that when additional officers arrived she attempted to comply by beginning to remove her sweater, but was assaulted by four officers who fractured her arm and placed her in a holding cell without medical care. Truong was convicted of three counts of shoplifting. In a separate case, Truong was charged with assaulting a custodial officer and battery, and she entered into a plea agreement in which she plead guilty to one count of violating section 148, subdivision (a)(1). (*Truong, supra*, at pp. 1425–1426.) Truong then filed a civil lawsuit with causes of action based on the officers' excessive use of force. The court rejected Truong's argument that her civil claim need not be barred under *Heck* because her failure to obey a lawful order ended when she began removing her sweater, and therefore took place before the officers began using excessive force against her. It explained, "A chain of events began when Truong refused the lawful order that did not end until she was disrobed. This was not a case where the acts alleged to be violations of the plaintiff's civil rights occurred hours, or even minutes, after the act which led to the plaintiff's conviction; the acts occurred mere moments later. Asserting that the crime was somehow over because the plaintiff changed her mind and started to remove her sweater is temporal hair-splitting, and would place deputies in untenable situations, where they are

21

required to guess the mindset of the arrestee. We agree with the trial court that Truong's refusal to obey the lawful order and the events that led to her injuries are part of an unbreakable chain of events. Therefore, the limit set forth in *Heck* applies here, and Truong's civil rights claim cannot be maintained." (*Id.* at p. 1429.)

Similarly, in *Fetters*, the court discussed at length the relevance of a temporal connection between the act leading to a criminal conviction and the act that supports a claim of excessive force. (*Fetters, supra*, 243 Cal.App.4th at pp. 838–840.) The court rejected Fetters's attempt to parse the incident into two separate interactions, concluding "there was no meaningful temporal break between the provocative act that Fetters admitted to in his criminal proceeding . . . and the use of force by [the officer] that Fetters claims was excessive and unreasonable." (*Id.* at pp. 840–841.)

Before granting summary adjudication in favor of defendants on Eric's excessive force claim, the trial court took judicial notice of relevant facts from the criminal trial and the later appeal. In presenting his defense at the criminal proceeding, Eric contended that Officer Ho used excessive force by firing his taser on Eric. The jury was instructed to find Eric not guilty if Officer Ho used unreasonable or unlawful force, but it still convicted Eric of violating section 148, subdivision (a)(1). On appeal, the appellate division rejected Eric's argument that "Officer Ho was not engaged in the lawful performance of his duties as a peace officer when he deployed the taser gun."

Eric's civil claim for excessive force is barred under *Heck* because the criminal jury necessarily found Officer Ho's conduct to be lawful and not an unreasonable use of force. A finding of civil liability would invalidate the jury's determination that Officer Ho acted lawfully in detaining and arresting Eric, a result barred by *Heck*. (*Heck*, *supra*, 512 U.S. at p. 486–487.) During Eric's criminal jury trial, the question whether Officer Ho lawfully deployed the taser was intertwined with the jury's decision to convict Eric of violating section 148, subdivision (a)(1). Eric's conviction inherently includes a finding that Officer Ho's actions were lawful.

Eric also belatedly argues that his treatment near the squad car provides a separate basis for his excessive force claim against Officer Ho. However, the first amended complaint does not allege Officer Ho used excessive force when he directed Eric to the squad car and handcuffed him. We therefore limit our analysis to whether the *Heck* bar applies to Eric's claim that Officer Ho's use of the taser constituted excessive force. We conclude that because Officer Ho fired his taser when Eric was ignoring commands to stay back, the actions were part of a continuous interaction and the *Heck* bar applies.

*Dismissal under section 1203.4 does not invalidate Eric's conviction*

Eric also argues the *Heck* bar no longer applies because his section 148, subdivision (a)(1) conviction was dismissed

23

under section 1203.4.  As we explain below, we conclude a dismissal under section 1203.4 does not invalidate a conviction for purposes of removing the *Heck* bar preventing a plaintiff from bringing a civil action.

A court deciding whether a civil action is precluded "must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed *unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.*" (*Heck, supra,* 512 U.S. at p. 487, italics added.)  To demonstrate that the conviction or sentence has been invalidated or favorably terminated, the "plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus [citation]." (*Id.* at p. 486–487.)  The central issue is whether a dismissal under section 1203.4 satisfies that requirement under *Heck*.  If the conviction or sentence has not been so invalidated, plaintiff's suit is barred.  (*Id.* at p. 487.)

"California courts have consistently held that favorable termination in the context of a malicious prosecution action requires a plaintiff to show more than a mere dismissal of the underlying action; he or she must show facts establishing his or her innocence." (*Fetters, supra,* 243 Cal.App.4th at p. 844.)  A dismissal under section 1203.4, while sometimes inaccurately described as an

24

"expungement," is in no way equivalent to a finding of factual innocence. Section 1203.4 simply authorizes a court to grant relief to individuals who successfully complete the terms of probation by mitigating some of the consequences of conviction. (*People v. Parker* (2013) 217 Cal.App.4th 498, 501.) "Section 1203.4 does not, properly speaking, 'expunge' the prior conviction. The statute does not purport to render the conviction a legal nullity. Instead it provides that, except as elsewhere stated, the defendant is 'released from all penalties and disabilities resulting from the offense.' The limitations on this relief are numerous and substantial, including other statutes declaring that an order under section 1203.4 is ineffectual to avoid specified consequences of a prior conviction. [Citations.] Furthermore, by the statute's own terms, an order under section 1203.4 'does not relieve' the ex-offender of 'the obligation to disclose the conviction in response to any direct question contained in any questionnaire or application for public office [or] for licensure by any state or local agency . . . .' (§ 1203.4, subd. (a).) [¶] Indeed, section 1203.4 contains a sweeping limitation on the relief it offers, stating that 'in any subsequent prosecution of the defendant for any other offense, the prior conviction may be pleaded and proved and shall have the same effect as if probation had not been granted or the accusation or information dismissed.' This provision alone precludes any notion that the term 'expungement' accurately describes the relief allowed by the

statute." (*People v. Frawley* (2000) 82 Cal.App.4th 784, 791–792.)

Even if a section 1203.4 dismissal could properly be characterized as an expungement, it is not an "executive expungement" or reversal on the merits contemplated in *Heck*. Federal case law runs contrary to Eric's argument as well. (See, e.g., *Dickerson v. New Banner Institute, Inc.* (1983) 460 U.S. 103, 115, superseded by statute on other grounds ["expunction does not alter the legality of the previous conviction and . . . under state law means no more than that the State has provided a means for the trial court not to accord a conviction certain continuing effects under state law"]; *U.S. v. Crowell* (9th Cir. 2004) 374 F.3d 790, 792 ["[a]lthough 'expungement' may mean different things in different states, in general when a defendant moves to expunge records, she asks that the court destroy or seal the records of the fact of the defendant's conviction and not the conviction itself"]; *Gilles v. Davis* (3d Cir. 2005) 427 F.3d 197 [expungement under a pretrial diversion program is not a favorable termination that would remove *Heck* bar to a section 1983 malicious prosecution claim].)

Eric cites no case law supporting his argument that a dismissal under section 1203.4 invalidates his conviction or qualifies as a favorable termination similar to an executive pardon or a reversal on appeal. Instead, we conclude that even after the court presiding over Eric's criminal case granted his petition under section 1203.4, there remained a "conviction or sentence" (as that term has been interpreted

by both California and federal courts) that would necessarily be invalidated if Eric were to prevail on his civil claim. Eric's excessive force claim remains barred under *Heck*.

## Eric's malicious prosecution claim

Eric contends the trial court erroneously denied his motion for leave to amend his complaint to add a claim for malicious prosecution. Eric criticizes the lower court's ruling as ignoring language in the parties' stipulation reserving his right to reinstate his malicious prosecution claim if his conviction was reversed on appeal and preserving his right to challenge the federal court's dismissal of that claim. The record on appeal establishes that the court conducted a hearing on the plaintiffs' motion for leave to file a second amended complaint on July 2, 2013, with counsel appearing for plaintiffs and defendants. Eric did not provide a reporters' transcript or suitable substitute of what transpired at the July 2, 2013 hearing.

It is the burden of the appellant to produce an adequate record demonstrating trial court error. (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574–575; *Baker v. Children's Hospital Medical Center* (1989) 209 Cal.App.3d 1057, 1060.) Without a record of the oral proceedings, we cannot review whether the trial court abused its discretion in denying Eric's motion for leave to file an amended complaint. The numerous situations in which appellate courts have refused to reach the merits of an appellant's claims because no

reporter's transcript or a suitable substitute of a pertinent proceeding was provided are set forth in *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 186–187.

Responding to an invitation from this court to submit letter briefs on the absence of an adequate record, Eric directed this court's attention to the notice of ruling contained in appellant's appendix. Eric's letter brief states that appellants and respondents stipulate that the notice of ruling "accurately reflects what the court said at the July 2013 hearing and the reasoning behind its ruling on the issue." He proposes that the notice of ruling be used as an agreed statement under the California Rules of Court, rules 8.120(b)(2) and 8.130(h)(2). Eric's proposal falls short because it does not comply with the rules governing agreed statements set forth in rule 8.134 of the California Rules of Court.

Arguments, concessions, and offers of proof made during the hearing are relevant to a determination of whether the trial court abused its discretion by denying leave to amend. Without a reporter's transcript or a suitable substitute, we have no information about what arguments were raised at the hearing that might have affected the court's exercise of discretion, including the possibility Eric's counsel may have conceded that Eric failed to obtain a reversal of his conviction on appeal or that the parties' stipulation did not permit Eric to refile his malicious prosecution claim absent such a reversal. Because the

record is inadequate for appellate review, we presume the court ruled correctly and affirm.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to defendants and respondents Mario Fizulich, Phillip Ho, and Ellen Tumbocon.


KRIEGLER, J.


We concur:



TURNER, P.J.



KIN, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.