Filed 8/16/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| BELINDA SKULASON,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>CALIFORNIA BUREAU OF REAL ESTATE,<br><br>        Defendant and Appellant. | A147047, A147814<br><br>(San Francisco County<br>Super. Ct. No. CGF-15-514284) |

Belinda Skulason, a real estate salesperson, brought this action against the California Bureau of Real Estate (Bureau) alleging that it wrongfully refused to remove from its public website a document revealing that she had been convicted of three misdemeanors. She asserted that the Bureau was required to remove the document because the convictions, while valid when entered, were eventually dismissed under Penal Code sections 1203.4 and 1203.4a.[1] The trial court agreed and entered a judgment granting a writ of mandate. We reverse and hold that the Board has no mandatory duty to remove from its website publicly available information about a licensee's convictions, including convictions that are eventually dismissed under sections 1203.4 and 1203.4a. Since we reverse the judgment, we also reverse the trial court's order awarding Skulason her attorney fees.

---

[1] All subsequent statutory references are to the Penal Code unless otherwise indicated.

# I.
## FACTUAL AND PROCEDURAL
## BACKGROUND

Between 1996 and 1999, Skulason was convicted of three misdemeanors involving the operation of a vehicle, and she was placed on probation for two of them. In 2000, she applied for a real estate salesperson's license. Rather than granting the license, the Bureau initiated an administrative proceeding by filing a statement of issues listing Skulason's three convictions and alleging that they "constitute[d] cause for denial of [Skulason's] application." (See Gov. Code, § 11504.) The administrative proceeding was settled in 2004 when Skulason "admitt[ed] that the allegations of the Statement of Issues . . . [were] true and correct" and the Board agreed to issue her a restricted license. The settlement did not require the parties to maintain its confidentiality.

In 2010, Skulason successfully applied to the Bureau for an unrestricted license. Three years after receiving her unrestricted license, she obtained court dismissals of her three misdemeanor convictions. The two convictions for which she was placed on probation were dismissed under section 1203.4, and the third conviction was dismissed under section 1203.4a.

The Bureau maintains a public website that contains information about real estate licensees. On that website, a page about Skulason can be accessed that identifies her license number, the unrestricted status of her license, the dates of license issuance and expiration, and several actions the Bureau has taken involving her license. At the bottom of the page, under the heading "Disciplinary or Formal Action Documents," is a link to "H-08823SF," which is a reference to the case number of the administrative proceeding that resulted in Skulason's 2004 restricted license. The parties agree that by clicking on this link website visitors were able to access an electronic copy of the statement of issues

2

from that proceeding and see the references to the three misdemeanor convictions.[2] Apparently, nothing on the website indicated that the three convictions had been dismissed.

Skulason sought to have the Bureau remove the statement of issues from the website because of its reference to the dismissed convictions. She was unsuccessful, and she then brought this action, which included a petition for a writ of mandate under Code of Civil Procedure section 1085, subdivision (a), and a request for declaratory and injunctive relief. Specifically, she sought an order requiring the Bureau "to remove any document referencing her expunged convictions from its website."

After the Bureau filed an answer admitting many of the petition's factual allegations, Skulason filed a motion for judgment on the writ petition. The trial court held a hearing and ultimately granted the petition, ordering the Bureau to "remove any and all documents containing information about [Skulason's] expunged and/or dismissed convictions from its public website and publicly searchable database." The court stated, "The point of the expungement law is to allow those who have completed their criminal sentences to wipe their slates clean, apply for work, and build careers and lives without the specter of old convictions haunting them." It remarked, "It is profoundly unjust [for the Bureau] to frustrate the purpose of the Penal and Labor Codes by posting expunged conviction information with full knowledge of the potential harm it can cause." A judgment reflecting the order was subsequently entered.

After the judgment was entered, Skulason filed a motion for attorney fees. The trial court awarded her fees in the amount of $42,430.19 under Code of Civil Procedure section 1021.5. The Bureau separately appealed from the judgment issuing the writ of mandate and the order awarding attorney fees, and we granted the Bureau's motion to consolidate the two appeals.

---

[2] Visitors cannot currently access a copy of the statement of issues on the Bureau's website. After entering judgment, the trial court lifted the stay of execution of the writ pending appeal and ordered the Bureau "to immediately . . . remove any and all documents referencing Ms. Skulason's expunged convictions from its website and searchable database." The Bureau filed a return stating it had complied.

3

## II.
### DISCUSSION

#### A. *The Bureau Has No Mandatory Duty to Remove From Its Website Publicly Available Information About Skulason's Dismissed Convictions.*

"To obtain a writ of mandate under Code of Civil Procedure section 1085, the petitioner has the burden of proving a clear, present, and usually ministerial duty on the part of the respondent, and a clear, present, and beneficial right in the petitioner for the performance of that duty." (*Marquez v. State Dept. of Health Care Services* (2015) 240 Cal.App.4th 87, 103 (*Marquez*).) We review a trial court's ruling on a petition for a writ of mandate de novo, meaning that when the facts are undisputed, as they are here, we independently review the questions of law presented by the court's ruling. (*Seligsohn v. Day* (2004) 121 Cal.App.4th 518, 522-523.) Skulason argues that the trial court properly issued the writ of mandate because the Bureau's refusal to remove the statement of issues from its website violated a mandatory duty arising out of sections 1203.4 and 1203.4a, Labor Code section 432.7, and her constitutional right to privacy. We are not persuaded.

We begin by discussing sections 1203.4 and 1203.4a, which allow people convicted of crimes to obtain a dismissal of their convictions under certain circumstances. (*People v. Lewis* (2006) 146 Cal.App.4th 294, 297.) Section 1203.4 applies to those who have successfully completed probation, while section 1203.4a applies to those convicted of either a misdemeanor or an infraction and not placed on probation. Under both statutes, the consequence of a dismissal is that the convicted person is, with certain exceptions, "released from all penalties and disabilities resulting from the offense of which he or she has been convicted." (§§ 1203.4, 1203.4a.)

According to Skulason, the posting of the statement of issues on the Bureau's website imposes on her such a penalty or disability. Although she recognizes that neither the statement of issues nor the fact of her convictions is confidential, she contends that the posting nonetheless imposes a penalty or disability because the Bureau "is going out of its way to disseminate the information" by "publish[ing] the convictions to potential

4

employers with full knowledge that the convictions are now expunged." Because Skulason repeatedly describes her dismissed convictions as having been "expunged," we take a moment to discuss the legal effect of a dismissal under section 1203.4 or 1203.4a and the terminology used to describe it.

As a Court of Appeal recently explained, "[a] dismissal under section 1203.4, while sometimes inaccurately described as an 'expungement,' is in no way equivalent to a finding of factual innocence. Section 1203.4 simply authorizes a court to grant relief to individuals who successfully complete the terms of probation by mitigating some of the consequences of conviction. [Citation.] 'Section 1203.4 does not, properly speaking, "expunge" the prior conviction. The statute does not purport to render the conviction a legal nullity. Instead it provides that, except as elsewhere stated, the defendant is "released from all penalties and disabilities resulting from the offense." ' " (*Baranchik v. Fizulich* (2017) 10 Cal.App.5th 1210, 1225 (*Baranchik*); see also *Danser v. Public Employees' Retirement System* (2015) 240 Cal.App.4th 885, 894-895 ["section 1203.4 'was never intended to obliterate the fact that [a] defendant has been "finally adjudged guilty of a crime" ' " but " 'merely frees the convicted felon from certain "penalties and disabilities" *of a criminal or like nature*,' " italics added].) The cases discussing this principle mostly involve section 1203.4, but their analyses are equally relevant in construing section 1203.4a given the statutes' parallel language.

Rather than nullifying a conviction, a dismissal under these statutes confers more limited relief. To begin with, the relief is limited because other statutes specifically provide " 'that an order under section 1203.4 is ineffectual to avoid specified consequences of a prior conviction.[3] [Citations.] Furthermore, by [section 1203.4's]

---

[3] For example, section 290.007 requires sex offenders to register, and thereby be subject to having their identities reported on a website, even if they have had their convictions dismissed under section 1203.4. (*Doe v. Brown* (2009) 177 Cal.App.4th 408, 413, fn. 2.) Other statutes allow convictions dismissed under 1203.4 to be used to impeach a witness who is being prosecuted in a "criminal trial . . . for a subsequent offense" (Evid. Code, § 788, subd. (c)) and to be used for purposes related to the suspension of a driver's license. (Veh. Code, § 13555.)

own terms, an order under section 1203.4 "does not relieve" the ex-offender of "the obligation to disclose the conviction in response to any direct question contained in any questionnaire or application for public office [or] for licensure by any state or local agency . . . ." [Citation.] [¶] Indeed, section 1203.4 contains a sweeping limitation on the relief it offers, stating that "in any subsequent prosecution of the defendant for any other offense, the prior conviction may be pleaded and proved and shall have the same effect as if probation had not been granted or the accusation or information dismissed." This provision alone precludes any notion that the term "expungement" accurately describes the relief allowed by the statute.' " (*Baranchik, supra*, 10 Cal.App.5th at p. 1225.)

With the understanding that dismissals under sections 1203.4 and 1203.4a do not expunge or nullify prior convictions, we return to the central question of whether the Bureau has a mandatory duty to remove the statement of issues from its website for the reason that the posting imposes an unlawful penalty or disability. We conclude that the Bureau has no such duty.

As we have mentioned, Skulason does not dispute that the statement of issues is a public document, that she admitted the truth of the convictions when she settled the administrative proceeding, or that her convictions are a matter of public record. (See *People v. Field* (1995) 31 Cal.App.4th 1778, 1787 [records of a conviction dismissed under section 1203.4 are accessible to the public]; *People v. Sharman* (1971) 17 Cal.App.3d 550, 552 [section 1203.4 does not require conviction records to be removed from public access].) In her words, she "has never argued that section 1203.4 requires deletion or sealing of the now expunged convictions, nor that section 1203.4 renders the expunged convictions legal nullities that cannot be used for any purpose whatsoever including licensure." She also accepts that convictions dismissed under sections 1203.4 and 1203.4a "do not have to be removed from all public access."[4]

---

[4] We deny as unnecessary the Bureau's request for judicial notice of Skulason's conviction records. We also deny Skulason's request to strike those records from the appellate record.

Instead, Skulason's argument is that the posting of the statement of issues imposes a prohibited penalty or disability because sections 1203.4 and 1203.4a work "in conjunction with" Labor Code section 432.7. This latter statute extends certain protections to job applicants who have obtained dismissals of their convictions under sections 1203.4 or 1203.4a. It states, "No employer . . . shall ask an applicant for employment to disclose, through any written form or verbally, information . . . concerning a conviction that has been judicially dismissed . . . pursuant to . . . [sections 1203.4 or 1203.4a] . . . nor shall any employer seek from any source whatsoever, or utilize, as a factor in determining any condition of employment including hiring . . . any record . . . concerning a conviction that has been judicially dismissed . . . pursuant to . . . [these sections]." (Lab. Code, § 432.7, subd. (a)(1).)

Skulason argues that this provision creates a duty applicable to the Bureau, but we disagree. By its own terms, Labor Code section 432.7 prohibits conduct by "employers," and nothing in its language can be read as imposing a duty on non-employers such as the Bureau. In her petition, Skulason alleged that at least one potential employer denied her a job because it learned about her convictions from the statement of issues posted on the Bureau's website. But just because Labor Code section 432.7 may create a duty enabling Skulason to assert a cause of action against a potential employer does not mean that it creates a separate duty applicable to the Bureau.

We are similarly unconvinced by Skulason's argument that the posting imposes a penalty or disability by violating her constitutional right to privacy. A person claiming an actionable invasion of privacy must show (1) a specific, legally protected privacy interest; (2) a reasonable expectation of privacy; and (3) conduct constituting a serious invasion of privacy. (*Loder v. City of Glendale* (1997) 14 Cal.4th 846, 890-891.) Skulason cannot make such a showing because the statement of issues and the fact of her convictions are matters of public record. (See *Fredenburg v. City of Fremont* (2004) 119 Cal.App.4th 408, 422-423 [no privacy interest in public information]; *U.D. Registry, Inc. v. State of California* (1995) 34 Cal.App.4th 107, 113-114, 116 [publishing information obtained from public court records violates no privacy interest].)

7

Skulason insists that, even though neither the statement of issues nor the record of the convictions is confidential, the posting nevertheless imposes an unlawful penalty or disability because it makes it easier for potential employers and clients to learn of the prior convictions and use them as a reason not to employ her. She points out that "there is a vast difference between providing public access to documents and actually publishing the documents to the very people—potential employers—who are prohibited from seeking or using them. Most court records are technically public, but in many instances require a physical trip to the courthouse and occasionally money to view. It would be extremely burdensome for a potential employer to travel around to local courthouses to research and seek information on prospective employees in the court files."

Skulason's point is well taken. There is no doubt that the Internet substantially increases the ease with which the public can access information that was previously available only "after a diligent search of courthouse files" or other locally kept records. (*U.S. Dept. of Justice v. Reporters Committee* (1989) 489 U.S. 749, 764.) The reality of our electronic age, for better or worse, is that all kinds of public information that was once hard to obtain has become increasingly accessible, including information contained in or related to documents filed in court cases. (See, e.g., Honorable Lewis A. Kaplan, *Litigation, Privacy and the Electronic Age* (2001) 4 Yale Symp. L. & Tech. 1, 5.) And there is no doubt that increased access to information about prior convictions brings with it additional, and potentially harmful, collateral consequences. (See, e.g., Brian M. Murray, *A New Era for Expungement Law Reform? Recent Developments at the State and Federal Levels* (2016) 10 Harv. L. & Policy Rev. 361, 377-378.) Recognizing this, the trial court remarked that "[p]osting the information anywhere online is akin to publishing it on the front page of the newspaper" and that "the harm this can cause an individual seeking to establish themselves in the real estate (or any other) profession is clear." While we might not consider an Internet posting analogous to a front-page news story, we agree that posting information on the Internet allows the public far more access to that information than it might otherwise have. And this increased accessibility makes it easier for employers, intentionally or inadvertently, to use information "concerning a

8

conviction that has been judicially dismissed" in making an employment decision. (Lab. Code, § 432.7.) When a website includes information about a conviction but not about the conviction's subsequent dismissal, visitors are likely to be unaware of the dismissal or the potential applicability of Labor Code section 432.7. Such a website gives visitors incomplete information, leaves the person whose conviction was dismissed subjected to unwanted attention about a misleading fact, and exposes potential employers to possible liability if they rely on the website's information to deny an employment application.

Although we acknowledge these adverse consequences, Skulason has not provided, and we have not found, any legal authority establishing, or defining the scope of, any duty that would restrict the Bureau's ability to post publicly available information about a licensee on its website. Skulason does not explain whether any such duty would apply to other sensitive, publicly available information unrelated to convictions, or whether the duty would be binding on all governmental agencies, including non-licensing ones. At oral argument, Skulason's counsel posited that the duty arises only when the Bureau is informed that a conviction has been subsequently dismissed (i.e., that the Bureau has no independent obligation to inquire into the status of a conviction) and that the duty would not be satisfied if the Bureau left a conviction reference on its website but separately informed website visitors that the conviction had been dismissed. No authority, however, was offered to support these assertions.

Finally, it is of no moment that the law does not require the Bureau to post information about dismissed convictions. The Bureau has statutory authority to make public "the fact of an investigation or proceeding regarding a licensee or unlicensed person believed to be engaging in activities for which a real estate license is required." (Bus. & Prof. Code, § 10088.) And the Real Estate Commissioner is directed to "provide on the Internet information regarding the status of every license." (*Id.*, § 10083.2.) The trial court found that neither these statutes nor any other "provision of state law . . . requires posting expunged conviction information." While we agree that no law requires the Bureau to post documents that refer to convictions that have been subsequently dismissed, we disagree that this point matters. Under the law governing writs of

9

mandate, it does not matter that the Bureau has no mandatory duty *requiring* it to post the information.[5] What matters is whether the Bureau has a mandatory duty *prohibiting* it from posting the information. Skulason has cited no law creating such a duty, and the Bureau's posting of the information is therefore quintessentially discretionary and cannot be disturbed by a writ of mandate. (*Marquez, supra*, 240 Cal.App.4th at p. 103.)

We are sympathetic to Skulason's concerns, but her remedies lie with the Legislature or the Bureau, not with the courts through a writ of mandate. The Legislature can consider enacting a law to restrict the Bureau's ability to post documents that refer to convictions that have been dismissed under sections 1203.4 or 1203.4a. And the Bureau, rather than posting such documents unredacted and unexplained, can consider different approaches that might preserve its legitimate interests and still reduce the negative collateral consequences of its current practice. Our role, however, is limited to deciding whether existing law requires the Bureau, as ordered by the trial court, to "remove any and all documents containing information about [Skulason's] expunged and/or dismissed convictions from its public website and publicly searchable database." We conclude that it does not, and the court therefore erred by granting the petition for a writ of mandate.

---

[5] For this reason, it is inconsequential that, as amicus curiae the California Association of Realtors points out, a 2016 amendment to Business and Professions Code section 10083.2 authorizes the Bureau to remove old disciplinary violations from its online database. (Stats. 2016, ch. 558.) If anything, this amendment reinforces the discretionary nature of the Bureau's Internet-posting decisions.

10

*B.* *Skulason Is Not Entitled to Attorney Fees.*

In light of our reversal of the trial court's grant of the petition for a writ of mandate, we also reverse its award of attorney fees to Skulason. Only a successful party may obtain an award of attorney fees under Code of Civil Procedure section 1021.5. (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 560-561.) Because Skulason is not entitled to fees as a successful party, we need not resolve the parties' dispute whether the petition benefited "the general public or a large class of persons" as required. (Code Civ. Proc., § 1021.5.)

### III.
#### DISPOSITION

The judgment granting the petition for a writ of mandate and the order awarding Skulason attorney fees are reversed. The Bureau is awarded its costs on appeal.

11

_____

Humes, P.J.

We concur:

_____

Dondero, J.

_____

Banke, J.

*Skulason v. California Bureau of Real Estate* (A147047 and A147814)

Trial Court:

San Francisco County Superior Court


Trial Judge:

Hon. Ernest H. Goldsmith and Hon. Harold E. Kahn


Counsel for Defendant and Appellant:

Kelly A. Woodruff, Farella Braun + Martel LLP

Aviva J. Gilbert, Farella Braun + Martel LLP


Counsel for Plaintiff and Respondent:

Kamala D. Harris, Attorney General

Xavier Becerra, Attorney General

Kathleen A. Kenealy, Acting Attorney General

Diane S. Shaw, Senior Assistant Attorney General

Lisa W. Chao, Supervising Deputy Attorney General

Stephen Lew, Supervising Deputy Attorney General

Nhan T. Vu, Deputy Attorney General


California Association of Realtors as Amicus Curiae in Support of Respondent:

June Babiracki Barlow, Senior Vice President and General Counsel

Neil Kalin, Assistant General Counsel

Jenny Y. Li, Senior Counsel